GARRETT FREIGHTLINES, INC., a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 2297.

United States District Court
D. Idaho, E. D.

Dec. 14, 1964.

Maurice Greene, Marion J. Callister, Boise, Idaho, for plaintiff.

Sylvan A. Jeppesen, U. S. Dist. Atty., Boise, Idaho, for defendant.

FRED M. TAYLOR, Chief Judge.

This court has jurisdiction of this action by virtue of Title 28 U.S.C.A. § 1346, and venue is vested in this court under the provisions of Title 28 U.S.C.A. § 1402 (a).

The parties have filed a stipulation of facts, affidavits supporting their contentions and documents relating thereto. The stipulation of facts provides that the cause be submitted to the court for final decision on the record. The defendant then filed a motion for summary judgment and the plaintiff filed a counter-motion for summary judgment. Both of these motions were supported by briefs. The court is cognizant of the fact that these motions delve into the question of whether or not there is a genuine question of fact, and if there is such a question, the court must then decide the cause on the merits. However, the court is of the opinion that the parties, by their stipulation, have submitted all the evidence that is available, and because of this fact, the result of either determining the cause on the motions or the merits would be the same. This court will decide the cause on the motions, but believes that the result would be the same even if decided on the merits, due to the fact that the parties have stipulated to the completeness of the evidence.

Due to the procedural manner by which this suit has progressed, this court would make several observations. Concerning the stipulation of facts, this court is of the opinion that both parties intended this document to mean that all the possible evidence in the case has been put into the record. That is, neither side has any more evidence regarding the issues at hand. And secondly, that when both parties to a lawsuit move for a summary judgment, the inference of such action is that they both admit that there is not a question of fact remaining which would necessitate further proceedings.

Plaintiff is a motor carrier. During the month of November of 1957, plaintiff transported seven semi-trailer loads of engines for the government, the defendant, under government bills of lading. Plaintiff billed and received payment from defendant for the transportation by it of the seven shipments of freight. The charges were based upon tariff rates applicable where the exclusive use of the carrier's vehicle is requested by the shipper and is provided by the carrier. Subsequently, as a result of a post-audit, the government determined that there had been an overpayment for the transportation of the seven shipments, and deductions equalling the amount of the claimed overpayment were made from amounts due plaintiff for the transportation of other government freight. By this suit plaintiff seeks to recover the amount of these deductions. Plaintiff has stated its claim in two causes: the first cause of action is based on the deductions concerning five semi-trailers moving under a government bill of lading, and the second cause of action is based on the deductions concerning two semi-trailers moving under another bill of lading. The freight, the manner of shipping and the bills of lading in both causes are identical. Because the questions relating to each cause of action are substantially the same, this court will treat both causes of action the same for the purpose of deter-

mining the respective rights of the parties.

The shipments involved in this suit originated from the manufacturer's plant in Ramapo, New York. Denver-Chicago Trucking Co., not a party to this suit, transported the seven shipments from Ramapo, New York, to Denver, Colorado, and the plaintiff transported the shipments from Denver to their final destination at Travis Air Force Base, California. Each bill of lading for the shipment bears the following notation: "EXCLUSIVE USE OF THESE VEHICLE AUTHORIZED. To Meet Deadline Date 14 November 1957 at Destination. * * * " The evidence shows that "exclusive use" was requested by the shipper. The trailers involved were not loaded to full visual or weight capacity. However, the floor area of each trailer was completely used and there was no more room in the trailers for additional generator sets. The shipper marked on the top of the generator sets "no stowage on top". It appears from the evidence that the freight remained in the same trailers during the trip, but that plaintiff attached its own cabs to the trailers to transport them from Denver to Travis Air Force Base.

■■ The defendant's defense is comprised of three parts: (1) that plaintiff has not proved actual performance of exclusive-use-of-vehicle service, but if it has then, (2) that exclusive-use-of-vehicle service does not materially differ from truckload service, or (3) that the exclusive-use tariff does not apply in preference to the truckload tariff to vehicles loaded to capacity. The defendant urges, and this court agrees, that the plaintiff has the burden of showing exclusive-use service was performed. United States v. New York, N. H. & Hartford R. R. Co., 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247. This court must first decide if under the evidence submitted, the plaintiff has satisfied its burden of showing that it rendered exclusive-use service pursuant to the authorization.

The plaintiff's position in regard to its burden of proof is somewhat complicated due to the fact that they have destroyed most of the records that would tend to show the type of service the shipments were accorded. It does not appear that this destruction of records differs in any respect from the general business practices of other trucking companies. Destruction of records is authorized under the Federal Motor Carrier Act (U.S. Code, Title 49, Secs. 301 to 307, as amended) and the rules and regulations of the Interstate Commerce Commission. Destruction of Records, Part 203—Carriers and Brokers, Sections 203–307, 20 Federal Register p. 2582. This in itself would not seem to preclude the plaintiff from maintaining this action, especially in the light of the confusion regarding the basis for the deductions in this case. The plaintiff may still go ahead and attempt to make a prima facie case even in the absence of these records. There is also an absence of any notation on the bills of lading or the consignee's receipt in regard to whether seals had been affixed to the trailers in question. The court is of the opinion that this in itself is not fatal to the plaintiff's case. In order for this court to determine if exclusive-use service was rendered pursuant to the request, all that is necessary to find from the facts is that the freight was not transferred from the original trailers during the trip and that no additional freight was added to the trailers while they were in transit. While there are no driver's log books of how these precise shipments were treated by the trucking companies, the plaintiff has submitted affidavits showing the general practices of both companies in regard to shipments involving a request for exclusive-use. These affidavits also shed some light on the case by commenting on the freight bills that were preserved and the notations thereon. The evidence shows that the shipments were rendered expedited service by the use of a two-man sleeper cab operation which provided against the necessity of stopping in transit. The plaintiff's freight bills have the notation "not ckd at Den", meaning that plaintiff did not follow its customary practice of opening the trailers at Denver when it as-

sumed the responsibility of the shipment. The evidence also shows that the freight was not transferred to other trailers during the trip. Whether plaintiff added freight during transit, the evidence shows that the trailers were not opened at Denver where plaintiff assumed control of the trailers and the freight. The stipulation of facts points out that the freight was stamped "no stowage on top". Also, it provides:

" * * * but the floor area of each trailer was completely used and nothing could be carried on top of the generator sets because of the nature of the freight. * * * "

The affidavits show that customarily, seals would have been applied, even though there is absence of direct records to show that they were actually affixed. The undisputed evidence in this case, together with the inferences that may be drawn therefrom, constitutes prima facie proof that exclusive-use service was actually rendered.

Defendant cites and relies on the case of Pacific Intermountain Express Co. v. United States, Ct.Claims, decided July 17, 1964, 16 CCH, p. 52,214. It appears to this court that the Court of Claims in that case simply said that a bill of lading receipted by the government officer at the destination point would not amount to a prima facie case that the service was actually rendered pursuant to the request. There is more proof in the case here that exclusive-use service was rendered than there was in the Pacific Intermountain Express Co. case.

█ The defendant's second contention is that exclusive-use-of-vehicle service does not materially differ from truckload service, and in support of this position they have submitted an affidavit of a third party. The plaintiff's affidavits refute the defendant's position in this regard. The defendant urges that if there is no material difference between exclusive-use service and truckload service, and therefore, where two rates are applicable to the same shipments, the lower rate should be applied. The defendant

cites authority for this proposition. This court would agree with the defendant as to this contention, if, in fact, there is no material difference between the two services. However, this court is of the opinion that there is a difference. The plaintiff points out in its brief what appears to be a valid argument against the inconsistency in the defendant's contention:

"if the shipper gets no advantage from the exclusive use of the vehicle service, why did the shipper request on the bill of lading the exclusive use of the vehicle service by the carrier and thereby bind himself to pay the premium rate. In other words, if he were getting no benefit from that service, why order it and agree to pay for it?"

This position is somewhat strengthened by the fact that apparently the government desired expedited service, as noted on the bills of lading, and substantially received this service. This type of service is more assured when exclusive-use service is requested. Also, when exclusive-use service is provided, the shipper is guaranteed that his freight will not be mixed with the freight of another, nor will it be transferred to another vehicle once the trip begins. Primarily, defendant's argument seems to be that since the services are substantially the same, the lower truckload tariff should be applied. The government does not seem to be questioning the reasonableness of the tariffs as to each type of service, but instead is questioning whether there is a difference of service. Even though there is a possibility that if the government had shipped according to ordinary truckload they would have received the same services they did receive, the court must view this situation the same way the parties did at the time of contracting for the exclusive-use service. At the time the shipper requested the service, it was no doubt with the view that the added assurances of shipping under this type of service would be the most desirable and advantageous. The court does not believe that the defendant's second contention has any merit.

■ This brings us to the defendant's third contention, that the exclusive-use tariff does not apply in preference to the truckload tariff when vehicles are loaded to capacity. Both parties in this action have cited numerous authorities in an attempt to shed some light on this question. The question seems to have been decided in the case of Campbell "66" Express, Inc. v. United States, 302 F.2d 270, 271, 157 Ct.Cl. 365 (1962). In this case, the Court of Claims stated:

"In support of its contention that the exclusive use rates did not apply because the vehicles were fully loaded, defendant cites the decision of the Interstate Commerce Commission in Curtis Lighting, Inc. v. Mid-States Freight Lines, Inc., 303 I.C.C. 576. Although in that case the Commission said that the exclusive use rates were inapplicable since the shipment filled the carrier's vehicle to capacity, we think the Commission was actually saying that, because the shipper derived no benefit which it would not have had anyway, from the exclusive use of the vehicle when it was loaded to capacity, it would be unreasonable to apply the exclusive use rates.

"It cannot be truthfuully said that the exclusive use rate is inapplicable. It is applicable, where such use is requested. Perhaps the shipper did not know its goods would completely fill the truck. Rather than take a chance that they would, the shipper requested exclusive use, whether they did or not. This is what it asked for and this is what it received and should pay for, although, as it turned out, it would have gotten the same thing as to three truck loads had it been willing to take the chance. In such case it cannot be said the exclusive rate is inapplicable. It

is applicable, because the shipper requested this use. The tariff makes no exception of the case where it turns out that the shipment fills the truck.

"This court neither has the authority to determine the reasonableness of a motor carrier's past charges when the shipper challenges them as being unreasonable, nor the authority to refer the issue of reasonableness of such charges to the Commission. T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952. Thus defendant is not entitled to the deductions in issue on the ground that the exclusive use rates were unreasonable, or that, because they were unreasonable, they thereby became inapplicable.

"We think the exclusive use rates were applicable even though the shipments loaded the vehicles to capacity and, since defendant was properly charged for these shipments, plaintiff is entitled to recover the deductions defendant made from amounts due plaintiff for other shipments of Government freight."

See also T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959); Pacific Intermountain Express Co. v. United States, supra. It is therefore the opinion of this court that defendant's third contention as to the tariff applicable on capacity-loaded vehicles is incorrect as a matter of law.

In conclusion the court is of the opinion that the defendant has improperly deducted charges owed to the plaintiff for these shipments, and that the plaintiff is entitled to recover the same.

Counsel for the plaintiff shall prepare Findings of Fact, Conclusions of Law and a proposed Judgment, serve copies of the same on counsel for the defendant and submit the originals to the court.