**SOUTHERN PACIFIC
TRANSPORTATION
COMPANY**

v.

**The UNITED STATES.**

No. 272–75.

United States Court of Claims.

March 21, 1979.

Martin Sterenbuch, Washington, D.C., attorney of record, for plaintiff; Gajarsa, Liss & Sterenbuch, Washington, D.C., of counsel.

John Charles Ranney, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before COWEN, Senior Judge, and NICHOLS and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's exceptions, filed July 27, 1978, to the recommended decision of Trial Judge Louis Spector, filed May 2, 1978, pursuant to Rule 134(h), having been submitted to the court on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth,* it hereby affirms and adopts the decision as basis for its decision in this case. Therefore, it is concluded as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

SPECTOR, Trial Judge: The dispute in this case involves the proper charge to be applied to various rail services provided to the Government by plaintiff between July 20, 1971 and 1973, inclusive. At issue is whether or not an additional charge set forth in Item 720–G of Trans-Continental Freight Bureau Tariff 29–0 is authorized in this instance. As is usual in these transportation cases, plaintiff included the disputed charges in its bills and the Government paid the full amount billed. Thereafter the General Accounting Office determined the additional charge under Item 720–G to be excessive, and the alleged overpayments were deducted from later payments otherwise due on unrelated shipments.

---

* Although the court adopted the trial judge's separate findings of fact, which are set forth in his opinion, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

All the shipments in question were transcontinental, that is, they involved movement of freight from one side of the Rocky Mountains to the other. All such shipments were thereafter exported from Pacific coast ports. The above-cited Tariff 29–0 is generally applicable to shipments meeting that description. But the dispute between the parties is not so simply resolved. Each offers to lead the court through a veritable maze of cross-references, exceptions, revisions, and other historical data designed to establish the validity of its respective interpretations. As hereinafter illustrated, the various provisions to be weighed and interpreted would not win a prize in a clear-writing contest.

To begin with, Item 1130 of Tariff 29 provides that its rates apply only where the freight does not leave the carrier's possession "until delivered to common carriers by water at Pacific Coast Ports." Moreover, Item 1140 of Tariff 29 provides that the rates stated generally include unloading and wharfage services. Therefore, as a general rule, Tariff 29 would apply to "ship-side delivery" of export freight. However, an exception to Item 1130 provides that rates in Tariff 29 will also apply to export freight shipped by the U.S. Government, and it further states that Items 760 and 1140 of Tariff 29 will not apply to such shipments, but that Item 720 will apply. Accordingly, Government shipments need not be delivered "shipside" to be ratable under Tariff 29.

The shipments at issue in this case were not in fact delivered shipside. They were delivered to Government facilities at or near Pacific coast ports. Thereafter the Government assumed responsibility for actual shipside delivery. As a result, plaintiff's services did not actually include unloading or wharfage.

The above-mentioned Item 720–G of Tariff 29 on which this case centers became effective July 20, 1971. It is entitled "Rates Applicable on Waterborne Traffic" and it provides as follows:

Except as otherwise provided, when linehaul rates published in this tariff are applied on Export freight to the following ports:

All Pacific Coast Ports ▲  *  *

such rates are subject to an additional charge of *NS* 16 cents per 100 lbs or *NS* 320 cents per ton, net or gross, as rated.

*NS* Not subject to Items X–256 nor X–259.

  *  *  Reference to "Note 1 and explanation thereof"—ELIMINATED: provisions of item apply.

The ▲ symbol (hereinafter cited as the "triangular symbol") contained in this item means: "Denotes changes in wording which result in neither increases nor reductions in charges." The change of wording referred to by the triangular symbol in this instance involved the deletion of a "Note 1" to Item 720, and it is to that note that we now turn our attention.

The predecessor of Item 720–G, Item 720–F, contained a "Note 1" which provided that on traffic to Pacific coast ports "this charge is applicable only on rates applying to shipside," either because such application was so stated in the tariff, or because the carrier assumed loading, unloading or wharfage charges under tariffs on file with the Interstate Commerce Commission (I.C. C.). Because of this limitation in Note 1, and because Government shipments were not delivered shipside, the I.C.C. in 1970 held that the additional charge otherwise permitted by Item 720–F was inapplicable to Government shipments, despite language to the contrary in Item 1130 as above noted.[1]

A further historical fact regarding Item 720 of Tariff 29 is also worthy of mention. The charge now found in Item 720–G was originally placed in Tariff 29 in 1958, by incorporating by reference Item 220 of Ex Parte Tariff X–212. The latter is more fully described later in this opinion.

---

1. *United States v. Southern Pac. Co.*, 337 I.C.C. 504 (1970). The parties are agreed that Note 1 was eliminated from Item 720 in direct response to this I.C.C. decision. But they disagree as to whether its elimination was effective in nullifying that decision.

In addition to the generally applicable tariff (Tariff 29 in this instance) another route for determining the freight rates applicable to Government shipments is by means of a quotation made pursuant to 49 U.S.C. § 22 (1970). That section permits railroads to quote more favorable rates and services to the Government without being subject to a charge of illegal discrimination. Quotation 120 was made under this authority and applies to shipments of export freight to west coast ports such as the shipments in issue.

Item 1 of Quotation 120 grants the Government several benefits. First, it is entitled to the lowest available rate on export traffic from either Tariff 29, applicable domestic rates, or other applicable Section 22 quotations. The lowest rates applicable to the shipments involved in this case would be derived from Tariff 29. Second, the Government is permitted to utilize Tariff 29 rates without complying with certain export policing requirements, such as identifying the ocean vessel or the foreign destination which would otherwise be required by that tariff. Item 1 also provides that Quotation 120 rates derived from Tariff 29 include delivery to docks or "suitable interchange tracks with Government operated switching yards," but they "do not include car unloading charge or absorption of wharfage or dockage."

Item 4 of Quotation 120 grants the Government a further benefit. When shipments are rated under Tariff 29, or under domestic tariffs pursuant to Item 1 of that quotation, Item 4 grants the Government a 3 cents per 100 pounds allowance. That allowance was in fact granted to defendant on the shipments in suit.

Item 7½ of Quotation 120, added in 1958 and amended in 1960, provided during the years in suit that the rates applicable under that quotation were subject to Item 220-series, "Tariffs of Increased Rates and Charges No. X–212 and X–223." The Item 220-series imposed additional charges on "export, import, coastwise and intercoastal freight" from or to, *inter alia*, Pacific coast ports, and these charges were subject to a

Note A which read substantially the same as Note 1 to Item 720–F of Tariff 29 as described above. It will be recalled that Item 720 was originally derived from Item 220 of X–212. Note A of Item 220, however, was not deleted following the 1970 decision of the I.C.C., and it remained in effect during the years of the shipments at issue in this case.

Against this general background, the contentions of the parties may be summarized as follows. Plaintiff argues that Tariff 29 applies; that the exception to Item 1130 makes the charge in Item 720 applicable to Government shipments; that Item 720–G contains no language (now that Note 1 has been eliminated) which could preclude application of that item to non-shipside delivery of Government freight, and therefore that the charge set forth in Item 720–G is applicable to these shipments. In contrast, the Government asserts that Quotation 120 applies; that Item 7½ of that quotation incorporates a charge just like the one found in Item 720 of Tariff 29, together with a note which precludes such a charge where Government shipments are not delivered shipside; that Item 7½ supplants Item 720–G; therefore Item 720–G of Tariff 29 does not apply even though the actual line-haul rates applicable to these shipments were derived from Tariff 29, pursuant to Item 1 of Quotation 120. In addition, the Government argues that even if consideration is limited solely to Tariff 29, Item 720–G of that tariff is not applicable because, notwithstanding the deletion of Note 1, the history of Item 720 indicates that the additional charge at issue was never intended to apply to shipments not delivered shipside.

The interpretation of railroad tariffs presents questions not unlike those involved in the interpretation of any other document or contract in dispute. Unnatural or strained construction is to be avoided, all provisions of the tariff are to be considered in determining the meaning of any one of its provisions, and that interpretation should be derived which will give reasonable meaning to all provisions and not render

a part thereof absurd or mere surplusage or create conflicts.[2] So far as possible, effect should be given to every symbol, word, clause, and sentence contained in a tariff.[3] If an ambiguity is found to exist it must, under the rule *contra proferentem*, be construed against the drafter, which in this case is the carrier.[4] Specifically, in these transportation cases, when either of two tariffs may be applied to a shipment, the one which provides the lower rate is for application.[5]

■ Of course, application of the *contra proferentem* rule presupposes an ambiguity which is substantial and reasonable after the tariffs have been considered as a whole.[6] A strict construction against a carrier is not warranted where that would ignore a permissible and reasonable construction which conforms to the intentions of the framers of the tariff, avoids possible violations of the law, and accords with the practical application given by shippers and carriers alike.[7]

■ In summary, the crucial issue in this case is whether or not in light of all of the above rules of construction, the applicability of Item 720–G to Government shipments not delivered shipside is stated ambiguously in Tariff 29 when read with Quotation 120. For the reasons which follow, it is concluded that it is stated ambiguously, that this ambiguity must be construed against the carrier and in favor of the shipper, and that therefore the charge does not apply to these Government shipments.

Turning first to the provisions of Tariff 29, and giving effect to every word and symbol in Item 1130 and 720–G, it is apparent that an ambiguity exists within Item 720–G itself. While Item 1130 appears to state that Item 720 will apply to all Government shipments, including those not delivered shipside, Item 720–G itself contains a triangular symbol which we are told means that no change in charges resulted from the deletion of Note 1. The most reasonable interpretation of that symbol is that Item 720–G continues to apply to the same shipments and in the same manner as did its predecessor Item 720–F. As noted earlier, the I.C.C. determined that Item 720–F did not apply to Government shipments not delivered shipside. It follows that Item 720–G likewise does not apply to Government shipments not delivered shipside.

Plaintiff argues that the triangular symbol does not produce an ambiguity for two reasons. Firstly, it points out that nongovernmental shippers have always paid the Item 720 charge. Hence the elimination of Note 1 effected no increase or decrease in charges to nongovernmental shippers and they constitute the vast majority of plaintiff's customers. However, while it may be possible to interpret the triangular symbol to refer only to charges to nongovernmental customers of the carrier, it is equally reasonable (if not preferable) to interpret it to refer to all of plaintiff's customers. At the very least, that is a reasonable interpretation which must be preferred to the one urged by the drafter.

Secondly, plaintiff argues that the I.C.C. decision was not final either when Note 1 was deleted in 1971 or at the time the shipments in suit were transported, since that decision was then on appeal to the U.S. Court of Appeals for the District of Columbia.[8] This meant that the carriers still believed and maintained that Item 720 applied

2. *Southern Pac. Transportation Co. v. United States*, 454 F.2d 740, 745, 197 Ct.Cl. 143, 151 (1972).

3. *United States v. Missouri-Kansas-Texas R.R. Co.*, 194 F.2d 777, 778 (5th Cir. 1952).

4. *C & H Transportation Co. Inc. v. United States*, 436 F.2d 480, 482, 193 Ct.Cl. 872, 876 (1971).

5. *Emery Air Freight Corp. v. United States*, 499 F.2d 1255, 1262, 205 Ct.Cl. 49, 63 (1974).

6. *Aero Mayflower Transit Co. Inc. v. United States*, 162 Ct.Cl. 233, 239 (1963).

7. *Penn Central Co. v. General Mills, Inc.*, 439 F.2d 1338, 1340 (8th Cir. 1971).

8. According to plaintiff the I.C.C.'s decision was affirmed by order on January 17, 1974, Docket No. 72–1253 (D.C.Cir. 1974).

to Government shipments not delivered shipside notwithstanding the presence of Note 1. Therefore its deletion would have no effect on the charges to be paid by the Government.

■ That agreement is unpersuasive. It is at best the equivalent of stating that it was the carriers' unexpressed and subjective intent that the triangular symbol meant that they were continuing their policy of applying Item 720–G to Government shipments not delivered shipside. But it is a fundamental principle of contract interpretation that one party's unexpressed, subjective intentions do not bind the other party.[9] Viewed objectively, a Government shipper would have been aware of the fact that the I.C.C. decision had held the Item 720–F charge inapplicable to Government shipments, and that the triangular symbol further indicated no change in charges had resulted from deletion of the note. It would therefore have reasonably concluded that its freight contract with the carrier did not include an additional charge under Item 720–G. Since this is a reasonable interpretation of the triangular symbol, that symbol at best created an ambiguity as to whether the Item 720–G charge thereafter applied to the shipments in suit. In a controversy with the drafter of the provision, the shipper is entitled to its reasonable interpretation.

Even if Item 720–G is not deemed ambiguous by reason of the triangular symbol, the presence of Item 7½ in Quotation 120 creates an ambiguity as to whether the charge in Item 720–G applies to these shipments. The Government is clearly entitled to a rate determined from Quotation 120, if that rate is lower than the Tariff 29 rate. Since Item 1 of Quotation 120 applies the Tariff 29 rate, and Item 4 grants the Government a deduction of 3 cents per 100 pounds from that rate, a rate determined under Quotation 120 is lower and applies to the shipments in question. The plaintiff

has in effect acknowledged this by granting the Government the 3-cent allowance prescribed by Item 4.

Moreover, Item 7½ of Quotation 120 provides that the charges found in Item 220 of Ex Parte Tariffs X–212 and X–223 apply to Quotation 120 rates. Item 220 provides for an additional charge on all shipments of export freight to Pacific coast ports, and it was subject to a Note A during the years in question. This Note A reads substantially the same as Note 1 as it appeared in Item 720–F. Therefore the rationale of the I.C.C. decision would apply to Item 7½ of Quotation 120 as well as to Item 720–F of Tariff 29.

Accordingly, since Quotation 120 represents the contract between the parties, there are two provisions authorizing what appears to be the same additional charge. From a bare reading of the quotation and tariff, it is not clear whether or not the parties intended that both provisions apply to shipments rated under Quotation 120, but an examination of the purpose behind the two provisions serves to clarify that question.[10]

Ex Parte Tariff X–212, which contains the additional charge found in Item 220, first became effective in 1958. Item 220 was designed to cover port terminal services provided by carriers when shipments were delivered shipside. It was incorporated by reference into Quotation 120 by the addition of Item 7½, and into Tariff 29 by the predecessor of Item 720, also in the year 1958. It reasonably follows that Item 7½ and the predecessor of Item 720 were intended to cover like charges in alternative tariffs, and that these items were not designed to apply simultaneously to a single shipment. The rewriting of its predecessor as Item 720 and the deletion of Note 1 from Item 720–F do not alter that fact. Items 7½ and 720 were not originally intended to apply simultaneously to the same shipment.

9. *See,* for example, *ITT Arctic Services, Inc. v. United States,* 524 F.2d 680, 684, 207 Ct.Cl. 743, 752 (1975).

10. *See Atchison, Topeka and Santa Fe Ry. Co. v. United States,* 572 F.2d 843, 846, 216 Ct.Cl. 54, 59–60 (1978), *Great Northern Ry. Co. v. United States,* 178 Ct.Cl. 226, 237 (1967).

The literal terms of Item 7½ do not preclude a double application of the charge. That item indicates that Item 220 applies to all shipments rated under Quotation 120, including those instances in which Quotation 120 utilizes the rates of Tariff 29. Plaintiff does not in this instance contend that the Government owes the additional charge prescribed by Item 7½, presumably because of the I.C.C. decision earlier cited. But in other circumstances, for example where the Government was provided with shipside delivery of export freight, the same additional charge could be assessed twice, were we to hold in this case that Item 720–G also applied to shipments rated under Quotation 120. That interpretation would produce an absurd result completely at odds with the reasonable expectations and intentions of the parties.[11]

Accordingly, it is preferable to interpret Item 7½ to apply potentially to Quotation 120 shipments such as these, and Item 720 to apply to shipments rated under Tariff 29, but not under Quotation 120. At the very least, that is a reasonable interpretation. It follows that Quotation 120 was ambiguous on the issue of whether the charge found in Item 720–G applies when Quotation 120 derives its rates from Tariff 29. Defendant is entitled to have that ambiguity resolved in its favor.

Finally, plaintiff argues that this interpretation of Items 7½ and 720–G enables the Government to take advantage of Tariff 29's line-haul rates, without paying the other applicable charges found in that same tariff. The answer to that argument is simply that Item 720–G of Tariff 29 is not applicable. Notwithstanding the language of Item 1130 to the effect that "the provisions of Item 720 will apply" to Government shipments, one should not read that language in a vacuum. Item 7½ also exists, and is also potentially applicable. Because it is nearly identical to Item 720 it is necessary to interpret the contract between the parties as embracing Item 7½, but not the duplicating Item 720–G. This conclusion does not, as plaintiff contends, entail utilizing the favorable line-haul rates of Tariff 29 without incurring the other charges found in that tariff. It holds, rather, that where Quotation 120 contains a charge inapplicable to the instant shipments but potentially applicable to future shipments to shipside, and where that charge is nearly identical to a charge found in Tariff 29, a reading which would include both charges defeats the reasonable expectations of the parties. Therefore only the Quotation 120 charge may be found potentially applicable to shipments rated under Quotation 120.[12]

All the foregoing considered, it is concluded that plaintiff is not entitled to recover and its petition must be dismissed.

## CONCLUSION OF LAW

Upon the findings and the foregoing opinion, which are adopted by the court, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

11. *See Southern Pac. Transportation Co.,* 454 F.2d at 745, 197 Ct.Cl. at 151. Of course, if Item 720–G did not contain the triangular symbol, and if Quotation 120 did not contain Item 7½, there would be no contradiction between the two provisions and the language of Items 1130 and 720–G would prevail. There would be no ambiguity. An examination of the historical background of Item 720–G would not then be necessary or warranted and the Government's sole recourse to challenge the inclusion of the Item 720–G charge would be before the I.C.C. Plaintiff is correct in arguing that insofar as the Government's challenges in this court go to the reasonableness of the charge, they would be beyond our jurisdiction. However, once an ambiguity is found to exist, the issue is one of the applicability and interpretation of a particular tariff, a matter within the court's jurisdiction. It would be unreasonable to conclude that the parties intended Item 720–G to apply to these shipments. That is the question being decided in this case.

12. *See & cf. Western Pac. R. R. Co. v. United States,* 279 F.2d 258, 150 Ct.Cl. 1 (1960) involving an additional charge in the quotation and not, as here, an additional charge in a tariff almost identical to a like charge in the quotation.