ADVANCED DISTRIBUTION
SYSTEM, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–434C.

United States Court of Federal Claims.

Dec. 15, 1995.

John R. Bagileo, Washington, D.C., attorney of record for plaintiff. Barbara Stob; and Klein, Bagileo, Silverberg & Goldman, of counsel.

Brian S. Smith, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director; and James M. Kinsella, Assistant Director, of counsel.

### OPINION

FUTEY, Judge.

This case is before the court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Plaintiff argues that it was entitled to receive exclusive use charges for all shipments for which defendant requested such service, that defendant was not justified in eliminating such charges, and that summary judgment

for plaintiff is therefore appropriate. Defendant contends, however, that summary judgment should be granted in its favor, arguing that plaintiff was, in effect, paid its exclusive use charges up to the amount allowed by the Military Traffic Management Command's Freight Traffic Rules Publication No. 1A (MFTRP 1A).

### Factual Background

Plaintiff, a common carrier, offered to provide services to defendant, the United States Department of Defense (DOD) and its agencies, at rates set forth in various tenders. A PZ (per hundredweight per mile) rate applies to all tenders involved in the present case. The line-haul rates set forth in all tenders are based upon a minimum weight of 40,000 pounds. All tenders also include a charge for exclusive use service.

Over several years, defendant shipped cargo with plaintiff on numerous occasions. The shipments at issue here occurred between 1991 and 1993, and were subject to MFTRP 1A.[1] With regard to these shipments, the parties stipulate that: (1) defendant requested, and plaintiff provided, exclusive use service; (2) the shipments weighed less than 40,000 pounds; (3) the shipments were less than truckload shipments and did not occupy the full visible space of the transport vehicles; (4) plaintiff billed defendant at the 40,000 pound minimum rate or the minimum charge, where applicable, plus the exclusive use charge set forth in the respective tender; and (5) defendant denied payment of the exclusive use charge, calculated the line-haul charges due plaintiff as if the shipment weighed 45,000 pounds, multiplying the PZ rate in the tender for a minimum of 40,000 pounds by 45,000 pounds and the mileage, and paid either that amount or the minimum charge listed in the respective tender, whichever was greater.[2] With regard to a reaudit of government bill of lading C–8,888,483,

which is included in the present claim, the Comptroller General affirmed the government's decision to pay line-haul charges based on a minimum weight of 45,000 pounds and to deny payment of exclusive use charges. *Advanced Distribution System,* B–248291, 1992 WL 184391 (C.G. July 20, 1992) (*ADS* ).

On July 7, 1994, plaintiff filed a complaint in this court alleging that defendant breached its contract with plaintiff by rerating the bills of lading and refusing to pay the exclusive use charges. Plaintiff claims that, as a result of this breach, it has been damaged in the amount of $16,697.02, plus interest, attorney fees, and costs. By agreement, the parties stipulated to the material facts. Upon plaintiff's request, the court heard oral argument on the parties' cross-motions for summary judgment on November 28, 1995.

### Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of genuine issues of material fact, the burden then shifts to the non-moving party to show that a genuine factual dispute exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party shows an absence of evidence to support the non-moving party's

---

**1.** Although MFTRP 1A has been amended since the initial shipments occurred, the amendments have not substantively affected any item as it applies to the present case. The most recent version of each item is cited in this opinion.

**2.** On other shipments, which are not at issue here, defendant paid plaintiff at the 40,000-pound minimum rate set forth in the tenders,

plus the exclusive use charge. Stipulation of Material Facts at 2. That method of payment resulted in a higher total charge to defendant than the calculation method used in the present case. *Id.* at 2–3. At oral argument, defendant disregarded the payments made on the latter shipments as "mistakes." Transcript (Tr.) at 27.

case, the burden shifts to the non-moving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. The court must resolve any doubts about factual issues in favor of the non-moving party, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

 The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). Summary judgment will not necessarily be granted to one party or another simply because both parties have moved for summary judgment. *Corman v. United States,* 26 Cl. Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). A cross-motion is nothing more than a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman,* 26 Cl.Ct. at 1014).

 The parties in the present case propose conflicting interpretations of certain provisions of MFTRP 1A. Both plaintiff and defendant interpret those provisions as supporting their own position. Interpretation of tariffs or tenders generally involves ordinary rules of contract interpretation. *Southern Pac. Transp. Co. v. United States,* 596 F.2d 461, 464–65, 219 Ct.Cl. 540 (1979). The interpretation of contract language is a question of law, not fact. *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir. 1985); *see also National Rural Utils. Coop.*

*Fin. Corp. v. United States,* 14 Cl.Ct. 130, 136 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir. 1989). Courts look to contractual agreements between the parties to determine the rights and duties of carriers and shippers. *Baggett Transp. Co. v. United States,* 23 Cl.Ct. 263, 271 (1991) (the terms of the contractual relationship between carrier and shipper consist of the tender and incorporated tariff, which represent the offer, and the government bill of lading and its annotations, which represent the acceptance), *aff'd,* 969 F.2d 1028 (Fed.Cir.1992). Here, the court must determine whether defendant breached the terms of its agreement with plaintiff when it denied payment of exclusive use charges. Because this dispute centers around the interpretation of MFTRP 1A provisions that were incorporated into the agreement, the court therefore may properly resolve this dispute on summary judgment by determining whether, as a matter of law, defendant was justified in denying payment of exclusive use charges. *See Corman,* 26 Cl.Ct. at 1015.

### Discussion

MFTRP 1A, Item 105, directs carriers to provide exclusive use of vehicle service when so requested by DOD shippers. Exclusive use service, as described in Item 105, means that the vehicle furnished is devoted exclusively to the transportation of DOD's shipment; seals and locks are not broken; and lading is not transferred for the carrier's convenience. In other words, under exclusive use, a carrier forgoes the right to transport other cargo in the government's shipment, as well as any additional revenue that it could earn for carrying such cargo. An exclusive use charge may be added to compensate the carrier for any such loss of revenue. More specifically, Item 105(3) provides that "[e]xclusive use service shall only apply to truckload shipments, subject to truckload rates, minimum weights and/or charges. The charge for this service will be EU(1)$___ per mile per vehicle, in addition to the tender charges for line-haul transportation." Item 105(3), however, also notes that MFTRP 1A, Item 106, serves as an exception to the application of charges for

exclusive use service. In the present case, defendant denied payment of exclusive use charges under this exception.

Item 106(1) provides that charges for exclusive use will not be assessed in any of six enumerated circumstances. Two of these exceptions are discussed in the context of the present case. Specifically, Item 106(1) prohibits an additional charge for exclusive use service when: (1) line-haul charges are based upon a minimum weight of 45,000 pounds, or an actual weight in excess of 45,000 pounds; or (2) tender rates are based upon rate qualifiers PG, PJ, PL, PM, PV, PY, or ST.

Plaintiff interprets the relevant Item 106(1) exception as prohibiting the assessment of exclusive use charges only when line-haul charges are based upon a 45,000–pound minimum weight included in the carrier's tender. Plaintiff contends that the exception therefore does not apply when a carrier's tender contains a different minimum weight. Defendant, however, maintains that Item 106(1) is not governed by how a carrier structures its tender and reads the exception to mean simply that there will be no additional charge for exclusive use service on shipments that are paid for based upon a minimum weight of 45,000 pounds. Defendant thus views Item 106(1) as an either-or proposition and states that "the [g]overnment has the prerogative to *either* pay the exclusive use charge (plus the normal shipping charge) *or* the charge for a 45,000 pound shipment, whichever is less."[3] Defendant argues that this interpretation is supported by Item 106(2), which, along with Item 106(1), limits the government's liability for exclusive use "to a maximum of the normal charge for 45,000 pounds."[4]

Plaintiff, in contrast, relies on Item 106(2) to support its contention that Item 106(1) does not apply to the shipments at issue. Subsection 2 of Item 106 provides instructions to carriers who plan to include offers of exclusive use service in their tenders:

2. Carriers desiring to offer exclusive use of vehicle, as an optional accessorial service under ITEM *105*, should complete

Section F(2) of the DOD tender by entering the appropriate charge for EU(1). However, if carriers filing tenders with minimum weights based on 45,000 pounds or more, or one of the following Rate Qualifiers PG, PJ, PL, PM, PV, PY or ST, desire to offer exclusive use of vehicle they must complete Section F(2) of the DOD tender by entering EU(1) *$XX.XX*. The "XXXX's" indicate that the service is provided but cannot be charged for.

These instructions can be divided into two distinct parts. The first part instructs *all* carriers desiring to offer exclusive use service to complete Section F(2) of the DOD tender by entering the appropriate charge for EU(1). The second part is, however, directed *only* to carriers desiring to offer exclusive use service *and* filing tenders with a 45,000–pound minimum weight or one of the enumerated rate qualifiers. Carriers in this category are instructed to complete Section F(2) of the DOD tender by entering EU(1) $XX.XX, indicating that exclusive use service is provided, but at no additional charge.

Based on this language, plaintiff contends that Item 106(2) instructs carriers, such as itself, desiring to offer exclusive use and filing tenders with a 40,000–pound minimum weight and PZ rate qualifier to enter an appropriate exclusive use charge in their tenders. Plaintiff asserts that the government therefore must pay an additional exclusive use charge, unless the carrier includes a 45,000–pound minimum weight or one of the enumerated rate qualifiers in its tender. Defendant argues to the contrary, maintaining that Item 106(2) provides that a carrier may not charge for exclusive use when the government pays the carrier on a 45,000–pound minimum weight basis, whether or not 45,000 pounds was the minimum weight included in the carrier's tender. In response, plaintiff states that defendant is "simply wrong" and reiterates its position that "[t]he determinative factor is what the tender says, not what

**3.** Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and Defendant's Cross-motion for Summary Judgment at 5.

**4.** *Id.*

the Government unilaterally decides to pay." [5]

Defendant relies on *Phoenix Motor Express, Inc.*, B–235886, 1990 WL 278199 (C.G. June 4, 1990), to support its contention that it properly denied exclusive use charges under Item 106. The Comptroller General held in *Phoenix* that a carrier could not charge the government for exclusive use service where its payments were based on PM rates.[6] *Id.*, at *2. Plaintiff distinguishes *Phoenix* from the present case by noting that Item 106 specifically lists PM rates as prohibiting the payment of exclusive use charges. By contrast, PZ rates, which are utilized in the present case, are not listed.

In determining *Phoenix*, the Comptroller General stated the general intent of Item 106(2) as: "the 45,000–pound reference establishes that the government will not pay for exclusive use where it already is paying, in effect, for the truck's full capacity on a minimum weight charge basis." *Id.* Plaintiff disagrees with the Comptroller General's interpretation and maintains that such intent could have been explicitly stated in Item 106 with an instruction for carriers to bill at 45,000 pounds. Because Item 106 was not so drafted, plaintiff argues that no such intent underlies the rule. Defendant claims that, because it paid plaintiff's exclusive use charges up to the amount allowed by MFTRP 1A, plaintiff is not entitled to exclusive use charges.

The Comptroller General reiterated in *ADS* that the Item 106 restriction on exclusive use charges is not dependent upon the manner in which a carrier structures its tender in terms of minimum weight, or upon the actual weight of a shipment. *ADS* at *2. "Instead, the focus of Item 106 ... is on what the charges would be if the government's shipment had used the truck's entire capacity anyway." *Id.*

MFTRP 1A, Item 140, provides that "in no case shall the charge for any shipment from and to the same point, via the same route of movement, be greater than the charge for a greater quantity of the same commodity in the same shipping form and subject to the same packing provisions at a rate or rates and weight applicable to such greater quantity of freight." Defendant contends that payment for the shipments at issue therefore should be no greater than the charge for a 45,000–pound shipment, which equals a full truckload. Because defendant paid that amount, defendant maintains that plaintiff has already been fully compensated for its services and that any additional charges would violate the dictates of Item 140. Plaintiff, on the other hand, argues that defendant's construction of Items 105 and 106 violates the intent of the Item 140 maximum charge rule, because defendant's recalculations result in higher line-haul charges than would otherwise be applicable to the shipments.

Plaintiff maintains that, by virtue of the MFTRP 1A, Item 1001, definition of "truckload rates," a line-haul rate cannot be calculated on a minimum weight that is not shown in the carrier's tender. Item 1001 defines "truckload rates" as follows:

> Truckload rates or classes are those for which a truckload minimum weight is provided, and charges will be assessed at the truckload minimum weight shown in the carrier tender, except that actual weight will apply when in excess of the truckload minimum weight. Minimums of 20,000 pounds and greater will be considered truckload minimums.

In the present case, plaintiff included a truckload minimum weight of 40,000 pounds in its tenders. When it came time for payment, however, defendant, relying on the Item 140 maximum charge rule, paid plaintiff based on a minimum truckload weight of 45,000 pounds. Plaintiff contends that this recalculation by defendant is contrary to language in Item 1001, which indicates that charges will be assessed at the truckload

---

5. Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and Plaintiff's Opposition to Defendant's Cross-motion for Summary Judgment at 3.

6. The Comptroller General relied on *Phoenix* to reach the same conclusion in *Consolidated Freightways, Inc.*, B–236389, 1990 WL 278281 (C.G. July 25, 1990), another case involving PM rates.

minimum weight shown in a carrier's tender. Plaintiff asserts that the Item 106 exception therefore cannot apply to the shipments at issue.

 Although defendant does not address plaintiff's Item 1001 argument, it should be noted that the Comptroller General rejected the same argument in *ADS*. The Comptroller General stated that the Item 140 maximum charge rule essentially overrides the Item 1001 normal charge assessment rule and reiterated the position that, in circumstances such as those presented in the instant case, Item 140 requires that the line-haul charge be based on a 45,000–pound minimum weight. *ADS* at *2. The Comptroller General did not, however, provide any basis for this blanket statement, and the court finds no support for this position in MFTRP 1A.[7] The court considers the maximum charge provisions of Item 140 to be in conflict with the normal charge assessment rule that results from the Item 1001 definition of "truckload rates." This apparent conflict renders certain provisions of MFTRP 1A ambiguous.

 Because defendant drafted and published the MFTRP 1A provisions involved in the present case, the court, applying the doctrine of *contra proferentum,* must construe all ambiguities in favor of plaintiff. *Southern Pac.,* 596 F.2d at 465. Thus, the reference to "truckload rates" in Item 106(1) must be construed as plaintiff contends. The term "truckload rates" refers to truckload rates *set out in a carrier's tender.* As such, defendant improperly substituted the 45,000–pound minimum weight and should be required to pay plaintiff at the 40,000–pound minimum weight, plus exclusive use charges.

The court also rejects defendant's assertion that plaintiff included a 40,000–pound minimum weight in its tenders in an attempt to subvert the Item 106 exception. Plaintiff submitted its tender before receiving defendant's bill of lading and request for exclusive

use service. Had defendant not requested exclusive use, plaintiff's use of a 40,000–pound, rather than 45,000–pound minimum weight, actually would have benefitted defendant. Defendant therefore cannot now argue that plaintiff, without knowing that defendant would in fact request exclusive use service, submitted its tender with the lower minimum weight in an attempt to potentially subvert the Item 106 provisions.

 It is also critical, as well as undisputed, that defendant requested, and plaintiff provided, exclusive use service for the shipments at issue. Plaintiff and defendant are bound by their contract, which is governed by the terms set forth in plaintiff's tender and defendant's bill of lading, including the agreement to pay for exclusive use service. *Baggett,* 23 Cl.Ct. at 271; *see also A–Transport Nw. Co. v. United States,* 36 F.3d 1576, 1581 (Fed.Cir.1994). A contrary holding would render a carrier's tender meaningless by allowing the government to engage in after-the-fact rerating of charges in order to obtain a lower price than would be required under the terms of any prior agreement.

 Further, the court is unpersuaded by defendant's contention that furnishing exclusive use service is nothing more than providing full use of the vehicle. In responding that exclusive use service is indeed distinct from full-capacity truckload service, plaintiff relies on *Campbell "66" Express, Inc. v. United States,* 302 F.2d 270, 157 Ct.Cl. 365 (1962), and *Garrett Freightlines, Inc. v. United States,* 236 F.Supp. 594 (D.Idaho 1964). Although these cases were decided prior to the enactment of MFTRP 1A, they contain reasoning that is helpful in explaining the purpose of exclusive use service.

In *Campbell,* the United States Court of Claims noted that the exclusive use rate is applicable where such use is requested by the shipper. *Campbell,* 302 F.2d at 271. In *Garrett,* the United States District Court for the District of Idaho, quoting liberally from

---

7. While the court recognizes the General Accounting Office's special expertise and generally accords deference to decisions of the Comptroller General, those decisions are not controlling. *See Cutright v. United States,* 953 F.2d 619, 622 n. * (Fed.Cir.), *cert. denied,* 506 U.S. 821, 113

S.Ct. 71, 121 L.Ed.2d 37 (1992); *Honeywell, Inc. v. United States,* 870 F.2d 644, 647–49 (Fed.Cir. 1989); *Burroughs Corp. v. United States,* 617 F.2d 590, 597, 223 Ct.Cl. 53 (1980); *see also Health Sys. Mktg. & Dev. Corp. v. United States,* 26 Cl.Ct. 1322, 1325 (1992).

*Campbell,* rejected the government's contention that an exclusive use tariff did not apply to a full-capacity load. *Garrett,* 236 F.Supp. at 598. The *Garrett* court also concluded that exclusive use service differed materially from truckload service, stating:

> Even though there is a possibility that if the government had shipped according to ordinary truckload they would have received the same service they did receive, the court must view this situation the same way the parties did at the time of contracting for the exclusive-use-service. At the time the shipper requested the service, it was no doubt with the view that the added assurances of shipping under this type of service would be the most desirable and advantageous.

*Id.* at 597.

Under the Item 105 definition of exclusive use service, a carrier providing such service may not: (1) mix the shipment with other cargo; (2) break seals or locks; or (3) transfer lading for its own convenience. By contrast, a full truckload shipment means simply that the carrier may not add other cargo because the shipment occupies the truck's full capacity. No additional restrictions are placed upon a carrier in transporting such a shipment. Thus, when transporting a full truckload, a carrier may break seals or locks, and may transfer lading for the carrier's convenience.

In the present case, defendant was free to reject plaintiff's tender if defendant was unwilling to pay plaintiff at the 40,000–pound minimum weight, plus exclusive use charges. Instead, however, defendant: (1) accepted plaintiff's tenders; (2) requested exclusive use service in its bills of lading; and (3) tendered its shipments to plaintiff. Thus, defendant's actions show that, at a given time, defendant recognized some benefit to be derived from exclusive use service.

Moreover, defendant not only contemplated but also actually received certain added assurances by requesting exclusive use service. As plaintiff indicated during oral argument, by providing exclusive use service to

defendant, plaintiff was unable to break seals or locks, and, more importantly, could not transfer lading from one vehicle to another.[8] In emphasizing the uniqueness of exclusive use service, plaintiff noted that the additional restrictions imposed under exclusive use prohibited plaintiff from using its terminals to better utilize its equipment between points.[9] Such would not have been the case had defendant simply asked plaintiff to transport a full truckload shipment. Thus, even if, as defendant contends, carriers regularly provide full-capacity truckload service without breaking seals, the provision of such service does not alter the reality that a request for exclusive use service is a request for something extra and should be compensated accordingly.

In addition, plaintiff asks for attorney fees. The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(F) (1994), grants this court jurisdiction to award attorney fees and expenses. *M.A. Mortenson Co. v. United States,* 996 F.2d 1177, 1180–81 (Fed.Cir.1993). "Eligibility for attorney fees requires (1) that the claimant prevailed in the action, (2) that the government's position was not substantially justified, (3) that the award of attorney fees is not unjust, and (4) that the fee application is timely filed and supported by an itemized statement." *Doty v. United States,* 71 F.3d 384, 385 (Fed.Cir.1995) (citing *Commissioner, Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990)). Because the government has shown that its position was substantially justified,[10] plaintiff is not entitled to attorney fees under the EAJA. *See Transamerica Premier Ins. Co. v. United States,* 32 Fed.Cl. 308, 317 n. 8 (1994); *Grumman Data Sys. Corp. v. United States,* 28 Fed.Cl. 803, 811 n. 14 (1993). The court therefore denies plaintiff's request.

### Conclusion

The court concludes, as a matter of law, that defendant was not justified in denying

---

8. Tr. at 22–23, 41–42.

9. *Id.* at 42.

10. *Id.* at 38.

payment of exclusive use charges. Summary judgment in favor of plaintiff is therefore appropriate. Accordingly, plaintiff's motion is granted and defendant's cross-motion is denied. The Clerk is directed to enter judgment in favor of plaintiff in the amount of $16,697.02, plus interest as provided by law. Attorney fees are denied. No costs.