**BAGGETT TRANSPORTATION CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**C.I. WHITTEN TRANSFER CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**COAST COUNTIES EXPRESS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**TRI–STATE MOTOR TRANSIT CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Nos. 467–89C, 468–89C, 575–89C, 469–89C and 471–89C.

United States Claims Court.

May 31, 1991.

Richard O. Burst, Sr., Oklahoma City, Okl., for plaintiffs.

Odessa P. Jackson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Leonard Shinn, Gen. Services Admin., Washington, D.C., and James Armstrong, Dept. of Army, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

These consolidated contract cases are before the court on the plaintiffs' motions for partial summary judgment and the defendant's cross-motions for summary judgment. Plaintiff common carriers, trucking companies, contracted with the defendant, the United States, to transport military shipments. The plaintiffs claim entitlement to additional charges for alleged "exclusive use" service provided to the defendant on two grounds. For some shipments, the plaintiffs contend that notations on government bills of lading ("GBLs") requiring "prior consent" for removal of seals constitute requests for exclusive use as defined by the plaintiffs' various tenders and incorporated tariffs. For other shipments, the plaintiffs allege that the application of locks other than "ordinary seals" upon dromedary shipments requires the defendant to pay the plaintiffs the "exclusive use" rate.[1] The four plaintiffs rely on a variety of different carrier tenders and incorporated tariffs and on GBL annotations to support their claims for "exclusive use" rates. The defendant claims that it neither requested nor received exclusive use from the plaintiffs, and that neither the "prior consent" notation nor the application of locks other than "ordinary seals" constitute requests for exclusive use.

## FACTS

Plaintiff common carriers contracted with the Military Traffic Management Command (MTMC), the shipper, to transport shipments of government property. The terms of the contractual relationship between carrier and shipper consist of the tender and incorporated tariff, representing the offer, and the GBL and its annotations, representing the acceptance. *See Starflight, Inc.,* B–218844, 65 Comp.Gen. 84 (1985). The tender is a continuing offer by the carrier to perform transportation services for stated prices. *See Pennco Trucking, Inc. v. United States,* 20 Cl.Ct. 534, 537 (1990) (citing *Western Truck Lines, Ltd.,* B–148465, B–148615, 43 Comp. Gen. 54, 59 (1963)). The carrier's tariff, on file with the Interstate Commerce Commission, is incorporated into the tender, and sets out the applicable rates, charges, and services. The government bill of lading (GBL) is the document accepting the carrier's provision of services, and is often annotated by the shipper with various directions to the carrier. However, the carrier is responsible for issuing the bills of lading and ensuring their correctness in all respects. *Id.* at 539 (citing cases). The tariffs, annotations, and other sources affecting the contractual relationship between the carriers and shipper are set forth below.

### Individual Carrier Tariffs

*a. Baggett Transportation Co.*

Tariff BAGT 401–B, stating terms, rates, charges, and services applicable to the shipments in this case, provides in pertinent part:

---

**1.** The plaintiff in *Coast Counties Express, Inc.* does not assert this argument with regard to the shipments in that case.

EXCLUSIVE USE OF VEHICLES

Item 470

DEFINITION: Exclusive Use of Vehicle means that the Carrier will transport the shipment from origin to destination without combining said shipment with any other shipment in the same vehicle.

When requested by the shipper, Exclusive Use of the Vehicle shall be furnished subject to the following provisions:

a. Shipments subject to truckload rates, the charge shall be the same as that of a truckload shipment of the commodity being transported.

b. Shipments subject to Dromedary[2] rates, the charge shall be the line haul charge as provided in Item 12000(3) in this tariff.

Baggett's tariff 401–B applies to the shipments in dispute.

*b. C.I. Whitten Transfer Co.*

In the *Whitten* cases, C.I. Whitten tariff ICC WITT 403, in effect for the shipments in dispute, states, in pertinent part, that:

(1) The service of exclusive use of Dromedary shall mean the carrier will transport the shipment from origin to destination without combining said shipment with other shipments and/or without transferring said shipments from the original Dromedary and/or without removing seals, locks, or security devices from the Dromedary while in transit.

(2) Exclusive use of Dromedary will be furnished by carrier upon request by shipper, consignee or their designated agent. Any of the following shall constitute a request for exclusive use.

(a) When shipper requests exclusive use on the bill-of-lading.

(b) When shipper notates the bill-of-lading that carrier is not to break seals except in case of emergency or upon prior authority of shipper, consignee or their designated agent.

(c) When shipper applies a lock or other security device (other than an ordinary seal) to prevent easy access to Dromedary.

(d) When shipper makes an annotation which in any way denies carrier access to the Dromedary.

*c. Coast Counties Express, Inc.*

In *Coast Counties Express, Inc.*, Coast County tariff CCOI 324 states, in pertinent part, that:

EXCLUSIVE USE ON 410 SERVICE

When a shipper requests exclusive use on 410 Service, charges will be assessed on the basis of the applicable rate and minimum weight plus a charge of 25 cents per mile from origin to destination, subject to a minimum charge of $125.00 per shipment.

When a shipper inserts the following notation on the bill-of-lading:

"DO NOT BREAK SEALS EXCEPT IN CASE OF EMERGENCY OR UPON PRIOR AUTHORITY OF THE CONSIGNOR OR CONSIGNEE. IF FOUND BROKEN OR IF BROKEN FOR EMERGENCY REASONS, APPLY CARRIER'S SEAL AS SOON AS POSSIBLE AND IMMEDIATELY NOTIFY BOTH THE CONSIGNOR AND THE CONSIGNEE."

Carrier will consider this as requiring exclusive use and charges named in Paragraph 1 of this item will apply.

In addition to the tariff quoted above, Rocky Mountain Quotation 16 applies to the shipments in question in *Coast Counties,* and states in pertinent part:

Item 880

SECTION 1

*rules*

SEALING OF TRUCKS

Except as provided in Item 216, and except as to shipments for which the Government bill of lading (GBL) is annotated, "EXCLUSIVE USE OF VEHICLE REQUESTED BY THE GOVERNMENT

---

**2.** A dromedary is a large container mounted on a tractor or flat bed. The container has doors that can be locked.

(AR 55–355, 214046.b)" or similar provisions or in the following manner, "DO NOT BREAK SEALS EXCEPT IN CASE OF EMERGENCY OR UPON PRIOR AUTHORITY OF THE CONSIGNOR OR CONSIGNEE. IF FOUND BROKEN OR IF BROKEN FOR EMERGENCY REASONS APPLY CARRIER SEALS AS SOON AS POSSIBLE AND IMMEDIATELY NOTIFY THE CONSIGNOR AND THE CONSIGNEE (AR 55–355 212012.a)", the application of seal/locks and the recording of seal numbers in the block provided on the GBL will not, in itself, require exclusive use of the vehicle.

When a seal or lock is used to fix a shipment to flatbed, lowboy, or other open equipment, exclusive use will not be accorded the shipment unless the GBL is annotated as shown in the first paragraph. If the GBL is not annotated, seals or locks may be removed at carrier option.

Vehicles sealed either by shipper or carrier, for carrier convenience, may not be construed as requiring exclusive use.

This item will apply only to Department of Defense shipments and, except as provided in Item 216, if the provisions of this item conflict with any other provisions, named in carrier/bureau tenders or tariffs, the provisions of this item will apply.

*d. Tri–State Motor Transit Co.*

In *Tri–State*, tariff TMST 4000–B, in pertinent part states:

> EXCLUSIVE USE OF DROMEDARY OR 410–CONTAINER

When a shipper requests exclusive use of an entire Dromedary or a 410–Container for a less-than-truckload shipment, charges will be assessed on the basis of the applicable rate and minimum weight plus a charge of 25 cents a mile from origin to destination subject to a minimum charge of $125.00.

When a shipper inserts the following notation on the bill of lading:

"DO NOT BREAK SEALS EXCEPT IN CASE OF EMERGENCY OR UPON PRIOR AUTHORITY OF THE CONSIGNOR OR CONSIGNEE. IF FOUND BROKEN OR IF BROKEN FOR EMERGENCY REASONS, APPLY CARRIER'S SEAL AS SOON AS POSSIBLE AND IMMEDIATELY NOTIFY BOTH THE CONSIGNOR AND THE CONSIGNEE."

Carrier will consider this as requiring exclusive use and charges named in paragraph 1 of this item will be assessed.

Any notation which in any way limits or denies carrier access to the Dromedary or 410–Container truck or semi-trailer (as the case may be), shall be deemed by the carrier to require exclusive use and the charges named in paragraph 1 of this item shall be assessed.

Notations on GBLs

In all five cases, defendant shipper placed the following "prior consent statement" on most of the GBLs of the shipments for which exclusive use charges are in dispute:

> SHIPPER SEALS APPLIED. CARRIER MAY REMOVE SEALS AND REPLACE WITH EQUIVALENT SEALS ON PRIOR CONSENT OF CONSIGNOR. IF SEALS ARE BROKEN IN EMERGENCIES, NOTIFY CONSIGNOR AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEAL CHANGES ON GBL. APPLICATION OF SHIPPER SEALS DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF VEHICLE/CONTAINER.

Other GBLs in *Baggett* were endorsed as follows:

> SHIPPER SEALS APPLIED. CARRIER MAY REMOVE SEALS PRIOR TO CONSENT OF CONSIGNOR. IF SEALS ARE BROKEN IN EMERGENCIES, NOTIFY CONSIGNOR AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEALS CHANGES ON GBL.

Other GBLs in the *Whitten* and *Tri–State* cases were endorsed with the following annotation:

> SHIPPER SEALS APPLIED. CARRIER MAY REMOVE SEALS AND RE-

PLACE WITH EQUIVALENT SEALS. IF SEALS ARE BROKEN IN AN EMERGENCY NOTIFY CONSIGNOR (with name and 24 hour telephone number inserted) AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEAL CHANGES ON GBL. APPLICATION OF SHIPPER SEALS DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF SERVICE.

Other GBLs in the *Whitten* and *Tri-State* cases were not endorsed at all.

Other Sources Concerning Requests for Exclusive Use

a. *Special services*

Federal regulations governing the transport of government property require that GBLs be annotated to reflect the provision of special services. 41 C.F.R. § 101–41.302–6(a) (1986), entitled "Special services," provides:

(a) Additional information or facts necessary to support higher charges resulting from accessorial or special services ordered and furnished incidental to the line-haul transportation shall be inscribed on the face of the GBL in the section designated "Marks and Annotations" or on the reverse side of the GBL beneath the caption "Special Services Ordered." The inscription shall contain the name of the carrier upon whom the request was made and the kind and scope of services ordered and shall be signed by or for the person ordering the services. If such an inscription is impractical, a statement containing the information and bearing the number of the covering GBL and signed by or for the person who ordered the services will be acceptable.

See *Pennco Trucking*, 20 Cl.Ct. at 538–39.

b. *Exclusive use provisions of GBLs*

The GBLs involved in these cases sets forth the manner in which exclusive use shall be requested. Under "Terms and Conditions," the GBL states that "[i]t is mutually agreed and understood between the United States and carriers ... who are parties to this bill of lading that ... [t]his bill of lading is governed by the regulations relating thereto as published in Title 41,

Part 101–41 of the Code of Federal Regulations." A portion of these regulations, 41 C.F.R. § 101–41.302–6(a), is set forth *supra*. Additionally, under the title "General Instructions and Administrative Directions," the GBL states:

(2) Where accessorial or special services, such as exclusive use of a car or truck, expedited service, protective services, reconsignment, etc., are ordered incident to the line-haul transportation, the bill of lading shall be endorsed to show the name of the carrier upon which the request was made and the kind and scope of the special services ordered. The endorsement may be placed on the face hereof in the "Marks and Annotations," block 15, or in the space provided on this page for "Special Services Ordered," and shall be signed by or for the person who ordered the services. If such an endorsement is impractical, the same information may be set forth in a statement bearing the number of the covering bill of lading, which shall be signed by or for the person who ordered the services and, if possible, attached to the bill of lading. If the bill of lading is not available, the original and one copy of the statement shall be surrendered to the carrier from which the services were ordered, the original to be transmitted to the last line-haul carrier for presentation in connection with the bill for line-haul transportation charges. Where accessorial or special services are shown as ordered but were not furnished, the bill of lading shall be so annotated.

The quoted paragraph in some respects is similar to 41 C.F.R. § 101–41.302–6(a).

c. *MTMR*

The Military Traffic Management Regulations ("MTMR"), addressing the transportation of DOD hazardous materials, also require that a notation requesting exclusive use be placed on the GBL when such use is desired. The regulations state:

(2) *Exclusive use of motor carrier vehicle.* When MTMC routing instructions indicate that the routing is based on the requirement for exclusive use of motor

vehicle, annotate this block: "Exclusive use of vehicle requested by the Government" or similar provision when instructed by the serving MTMC area command ... In addition, show the following indorsement in this block for execution by the carrier agent at destination: "I certify that exclusive vehicle service was furnished from (origin) to (destination)." At destination the delivery carrier agent must date and sign the indorsement. This indorsement is evidence that the service was performed and, when applicable, serves as authority for payment of higher transportation charges.

AR 55–355/NAVSUPINST 4600.70/AFR 75–2/MCO P4600.14B/DLAR 4500.3 (31 July 1986 UPDATE) at 173. The regulations also provide that when exclusive use has been requested and the above notation has been placed on the GBL, the following language is also added:

DO NOT BREAK SEALS EXCEPT IN CASE OF EMERGENCY OR UPON PRIOR APPROVAL OF THE CONSIGNOR OR CONSIGNEE. IF FOUND BROKEN OR IF BROKEN FOR EMERGENCY REASONS, CARRIER TO APPLY SEALS AS SOON AS POSSIBLE AND IMMEDIATELY NOTIFY BOTH THE CONSIGNOR AND THE CONSIGNEE.

*Id.* at 64.

The MTMR also sets forth required annotations for sealing vehicles/dromedaries even when exclusive use is *not* desired. For sensitive and secret shipments the required annotation is:

SHIPPER SEAL(S) APPLIED. CARRIER MAY REMOVE SEAL(S) AND REPLACE WITH EQUIVALENT SEAL(S) ON PRIOR CONSENT OF CONSIGNOR. IF SEALS ARE BROKEN IN AN EMERGENCY, NOTIFY CONSIGNOR (NAME WITH DUTY AND 24–HOUR NON–DUTY TELEPHONE NUMBERS) AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEAL CHANGES ON GBL. APPLICATION OF SHIPPER SEAL(S) DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF VEHICLE.

*Id.* at 171. For confidential, less-than-truckload shipments the required annotation is:

SHIPPER SEAL(S) APPLIED. CARRIER MAY REMOVE SEAL(S) AND REPLACE WITH EQUIVALENT SEAL(S). IF SEALS ARE BROKEN IN AN EMERGENCY, NOTIFY CONSIGNOR (NAME WITH DUTY AND 24–HOUR NON–DUTY TELEPHONE NUMBERS) AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEALS CHANGES ON GBL. APPLICATION OF SHIPPER SEAL(S) DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF VEHICLE.

*Id.*

The MTMR also mandates that transportation officers must ship sensitive shipments under security measures detailed by the regulations, with the measures bearing a relationship to the nature of the shipments. "[S]hippers will apply seals ... when use is prescribed" by the regulations, but "[s]eal applications by shipper do not constitute a request for exclusive use of vehicle." *Id.* at 88. "When exclusive use of a vehicle is required ... a serially numbered cable seal lock ... must be applied" but a "number 5 American wire gauge steel wire twist ... may be substituted ..." *Id.*

The parties, however, disagree about the applicability of the MTMR. The defendant argues that the MTMR governs the conduct of both the plaintiffs and the defendant. The plaintiffs claim that the regulations apply to the defendant only, that the plaintiffs had no notice of the regulations, and that because they are unpublished in the Federal Register or Code of Federal Regulations, the regulations are not binding law.

The parties also disagree as to the applicability of rules set forth in MTMR Freight Traffic Rules Publication No. 1. MTMR Item 325 covers dromedary service and provides that: application of seals shall not constitute a request for exclusive use; exclusive use will be requested only by the sentence "Exclusive use of Dromedary Service requested by Government" or similar

provision on the bill of lading; and the carrier will certify that exclusive use was in fact given when such use is requested.

MTMR Item 105 provides that the application of seals or locks shall not be interpreted as a request for exclusive use. The plaintiffs claim that these rules were not in effect at the time of the shipments in question. The defendant argues that the rules are incorporated into the plaintiffs' tenders and are therefore included in the parties' contractual agreement.

### d. Dual Driver Protection Service provisions

Dual Driver Protection Service (DDPS) was requested by the shipper and provided by the carriers for many of the shipments in these cases. For these shipments, the DDPS provisions of the respective tariffs provide that the "[c]arrier cannot apply exclusive use charges unless exclusive use is requested on the bill of lading by the shipper." ICC WITT 403, Item 810, paragraph 3; TSMT 4000–B, Item 810, paragraph 3.

### Performance and payment

Most of the shipments transported by the carriers arrived with unbroken seals. These shipments were transported from origin to destination without being transferred from their original containers and without being combined with other materials.

[1] In late 1986 and early 1987, the plaintiffs billed the government for the transportation charges for the shipping service at issue in these cases. These initial billings did not charge on the basis that exclusive use service was either requested or provided, and the government promptly paid the plaintiffs. The plaintiffs later began submitting supplemental billings to the government for exclusive use services. The government has not paid any of the supplemental billings which are the subjects of these consolidated lawsuits.

**3.** This discussion cites a number of cases decided by the Comptroller General. While decisions of the Comptroller General are not controlling, this court accords deference to these decisions

### DISCUSSION [3]

■ Two conditions must be met to establish the applicability of exclusive use of vehicle charges. *American Farm Lines, Inc.,* B–203805, B–204113, Dec. 24, 1981, slip op. at 2. (1) There must be some evidence that exclusive use of vehicle services was, in fact, performed. *Id.* (citing *Terminal Transport Company, Inc.,* B–155717, 44 Comp.Gen. 799 (1965)). (2) There must be substantial compliance with requirements of the tender or tariff concerning an annotation on the GBL requesting exclusive use. *Id.* (citing *Campbell "66" Express, Inc. v. United States,* 157 Ct.Cl. 365, 302 F.2d 270 (1962)).

### Evidence of Exclusive Use

■ To establish the applicability of exclusive use charges, there must be *some* evidence that exclusive use of vehicle service was, in fact, performed. *Terminal Transport Company, Inc.,* B–155717, 44 Comp.Gen. at 801. The Comptroller General set out the evidence to be considered in determining whether the carrier established the performance of exclusive use. *Id.* at 801–02. The best evidence is seal record on the bill of lading showing that the shipment was sealed at origin and that the seals were not broken when the shipment arrived at its destination. *Id.* Records of the carrier and other documentary evidence is the next best evidence. *Id.* at 802. Short of this type of evidence, the Comptroller General "consider[s] such secondary evidence as statements of persons having personal knowledge of the facts concerning the particular shipments." *Id.*

In these cases, the plaintiffs submitted affidavits stating that most of the shipments transported by the carriers arrived with unbroken seals. The affidavits also state that these shipments were transported from origin to destination without being transferred from their original containers and without being combined with other materials. The court accepts the affidavits as

in recognition of GAO's special expertise. *See, e.g., Honeywell, Inc. v. United States,* 870 F.2d 644, 647–48 (Fed.Cir.1989).

showing *some* evidence that exclusive use service was actually provided.

Substantial Compliance

The defendant contends that the GBL annotations in these cases do not contain requests for exclusive use in the manner set forth by the applicable tariffs or tenders, the GBLs, the MTMR, or the DDPS provisions of the applicable tariffs. Nonetheless, the plaintiffs argue that for some shipments the prior consent statement, noted on the GBLs, constitutes a request for exclusive use in "substantial compliance" with the provisions of the tenders or tariffs. The plaintiffs also argue that the MTMR and the rules in MTMR Freight Traffic Rules Publication No. 1 are not applicable to them. With regard to other shipments, the plaintiffs argue that the application of a lock is a constructive request for exclusive use.[4]

█ This court looks to the contractual agreements between the parties to determine the rights and duties of the carriers and shippers in these cases. The terms of the contractual relationship between carrier and shipper consist of the tender and incorporated tariff, representing the offer, and the GBL and its annotations, representing the acceptance. *Starflight, Inc.,* B–218844, 65 Comp.Gen. 84 (1985). This court is also guided by the principles enunciated in *Campbell "66" Express, Inc. v. United States,* 157 Ct.Cl. 365, 302 F.2d 270 (1962). In that case, the Court of Claims considered whether exclusive use charges applied to a shipment when exclusive use was provided even though the GBL did not contain the notation "Exclusive use of vehicle requested" as required by the applicable tariff rule. The court acknowledged that there must be compliance with the tariff rule, but the court found "substantial compliance" with this rule. The court stated:

> It is true that the tariff rule expressly provides what language is to be endorsed on the bill of lading in order to request the exclusive use of a carrier's vehicle, but we do not think that it was intended thereby that all other language adequate

to make the same request was to be excluded. It was not intended that form rather than substance would govern the transaction. If there appears on the bill of lading some written notation, which *reasonably apprises* the carrier that the shipper is requesting the exclusive use of its vehicle, we think this is sufficient compliance with the requirement for making the exclusive use rates applicable.

*Id.* at 370–71, 302 F.2d at 272 (emphasis added). The court held that the annotation "I certify That Exclusive Vehicle Service Was Furnished From ____ To ____" reasonably apprised the carrier that the shipper requested exclusive use and that the carrier was entitled to exclusive use charges. *Id.*

Consistent with the *Campbell "66"* case, this court seeks to determine in each case whether the written annotation or the application of locks *reasonably apprised* the carrier that the shipper was requesting exclusive use such that there was sufficient compliance with the requirement in the tender or tariff for making exclusive use rates applicable.

a. Written annotations

█ The plaintiffs argue that the prior consent statement, noted on most of the GBLs of the shipments in these cases, reasonably apprised the carrier that the shipper requested exclusive use of its vehicle and that the statement constituted a request for exclusive use in "substantial compliance" with the terms of the tenders or tariffs. This court must interpret the meaning of the prior consent statement in relation to the terms of the tenders or tariffs to determine whether the annotation reasonably apprised the carrier that the shipper was requesting exclusive use. Therefore, determination of "substantial compliance" in these cases turns on the meaning of the prior consent statement, the requirements of the tenders or tariffs, and whether the prior consent statement

---

**4.** This is not an issue in *Coast Counties Express, Inc. See, supra,* note 1.

reasonably apprised the carrier that the shipper was requesting exclusive use.

Unlike the tariffs in the *Whitten* and *Tri–State* cases, which state that exclusive use is requested when the shipper makes an annotation which in any way denies carrier access, the tariffs in *Baggett* and in *Coast Counties* provide no basis for concluding that the prior consent GBL annotation is a request for exclusive use. Moreover, absent tariff language suggesting otherwise, government regulations indicate that the prior consent statement does not reasonably apprise the carrier that the shipper is requesting exclusive use. The MTMR directs the shipping officer to place different types of annotations on the GBLs depending upon the type of service required. It states that the officer should annotate the GBL with the expression "Exclusive use of vehicle requested by the Government" and with the "DO NOT BREAK SEALS" language. For sensitive and secret shipments where exclusive use is *not* requested, the required annotation includes the language: "SHIPPER SEAL(S) APPLIED. CARRIER MAY REMOVE SEAL(S) AND REPLACE WITH EQUIVALENT SEAL(S) ON PRIOR CONSENT OF CONSIGNOR." In light of the MTMR provisions,[5] the carrier is not reasonably apprised by the prior consent statement that the shipper is requesting exclusive use. This conclusion is supported by the warning contained in the prior consent statement: "APPLICATION OF SHIPPER SEALS DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF VEHICLE/CONTAINER." The court is persuaded that the prior consent statement standing alone is not a request for exclusive use.

The application of these regulations distinguishes *Baggett* and *Coast Counties* from *American Farm Lines, Inc.*, B–203805, B–204113, Dec. 24, 1981, slip op. In that case, the tender contained a requirement that the GBL be annotated to show a request for exclusive use of vehicle service. The Comptroller General held that the phrase "DO NOT BREAK SEALS" substantially complied with the tender's annotation requirement. *Id.* at 5. Even though the words "exclusive use of vehicle" did not appear anywhere on the bills of lading, the carrier was allowed the higher premium charges for exclusive use of vehicle service. However, in *American Farm Lines, Inc.*, this conclusion was "supported by reference to Government regulations" in effect at that time. *Id.* (citing MTMR Regulation DSAR 4500.3; Department of the Navy Transportation Handbook for Hazardous Materials, NAVSEA OP 2165, volume 1; *American Farm Lines, Inc.*, B–199475, Sept. 29, 1981, slip op.). The MTMR provisions applicable in our cases are different from those that were applicable in the *American Farm Lines* case. The applicable regulations acknowledge that the "DO NOT BREAK SEALS" language is a request for exclusive use, but also specify that the "prior consent" language is *not* a request for exclusive use. This distinction drawn by the regulations supports the conclusion that the prior consent GBL annotation does not constitute a request for exclusive use in the *Baggett* [6] and *Coast Counties* cases.

---

5. While these regulations are directed at shipping officers, not to carriers, this court finds that the MTMR does provide guidance in interpreting the language of the annotations on the GBLs based upon established case law that carriers are expected to be aware of the shipping practices of the government, a major user of transportation services. *See Alcoa Steamship Co. v. United States,* 338 U.S. 421, 429, 70 S.Ct. 190, 194, 94 L.Ed. 225 (1949); *Leonard Brothers Trucking Co.,* B–215958, Feb. 18, 1986, slip op.; *Ultra Special Express,* B–181560, 55 Comp.Gen. 301 (1975).

6. The GBLs of some of the shipments in the *Baggett* case were endorsed with slightly different prior consent language, as follows: SHIPPER SEALS APPLIED. CARRIER MAY REMOVE SEALS PRIOR TO CONSENT OF CONSIGNOR. IF SEALS ARE BROKEN IN EMERGENCIES, NOTIFY CONSIGNOR AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEALS CHANGES ON GBL. This court finds that this annotation is substantially the same as the prior consent statement found on the other GBLs in the *Baggett* case. Therefore, both types of annotations, when read in conjunction with the tariff in *Baggett,* are not requests for exclusive use.

The tariffs incorporated into the tenders in the *Whitten* and *Tri–State* cases, however, are different than those in *Baggett* and *Coast Counties*. The tariff in the *Whitten* cases states that exclusive use is requested "[w]hen shipper makes an annotation which in *any way* denies carrier access to the Dromedary." (Emphasis added). In *Tri–State*, the tariff states that "[a]ny notation which in *any way* limits or denies carrier access to the Dromedary or 410–Container truck or semi-trailer (as the case may be), shall be deemed by the carrier to require exclusive use and the charges named in paragraph 1 of this item shall be assessed." (Emphasis added). As stated repeatedly, the contractual relationship between carrier and shipper is defined by the tender and incorporated tariff, representing the offer, and the GBL and its annotations, representing the acceptance. *Starflight, Inc.*, B–218844, 65 Comp.Gen. 84 (1985). This court finds that the prior consent statement at least in *some* way denies the carrier access to the dromedary. The plain language of the annotation states that the carrier may remove the seals only with the consent of the shipper. *See Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 413 (Fed.Cir.1988) (applying the plain language analysis of contract interpretation); *George Hyman Construction Co. v. United States*, 832 F.2d 574, 579 (Fed.Cir.1987) (stating that the words of an unambiguous contract should be "given their plain and ordinary meaning"). The prior consent statement standing alone does not constitute a request for exclusive use; however, read in conjunction with a tariff stating that an annotation is a request for exclusive use if it in *any way* denies the carrier access, the prior consent statement reasonably apprises the carrier that exclusive use is requested and constitutes a request for exclusive use in "substantial compliance" with the terms of the tariffs in the *Whitten* and *Tri–State* cases.

The government argues, however, that exclusive use was not properly requested on the GBLs as required by 41 C.F.R. § 101–41.302–6(a), the exclusive provisions of the GBLs and the MTMR, as well as by Dual Driver Protection Service provi-

sions in effect with respect to many of the shipments. The government contends that exclusive use was not requested because it was not explicitly requested on the bill of lading by the shipper. This court recognizes, however, that "[i]t was not intended that form rather than substance would govern the transaction. If there appears on the bill of lading some written notation, which *reasonably apprises* the carrier that the shipper is requesting the exclusive use of its vehicle, we think this is sufficient compliance with the requirement for making the exclusive use rates applicable." *Campbell*, 157 Ct.Cl. at 370–71, 302 F.2d at 272 (emphasis added). As in the *American Farm Lines* case, where exclusive use was found because of substantial compliance despite the fact that the words "exclusive use of vehicle" did not appear on the GBL, this court holds that the prior consent statement substantially complied with the terms of the tariffs in the *Whitten* and *Tri–State* contracts and that exclusive use was requested in those cases.

The GBLs *of some of the shipments* in the *Whitten* and *Tri–State* cases, however, were endorsed with an annotation other than the prior consent statement, as follows:

SHIPPER SEALS APPLIED. CARRIER MAY REMOVE SEALS AND REPLACE WITH EQUIVALENT SEALS. IF SEALS ARE BROKEN IN AN EMERGENCY NOTIFY CONSIGNOR (with name and 24 hour telephone number inserted) AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEAL CHANGES ON GBL. APPLICATION OF SHIPPER SEALS DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF SERVICE.

The annotation does not contain the "prior consent" language. It states that the carrier may remove and replace the shipper seals with equivalent seals, and that seal changes must be annotated on the GBL. This court holds that this annotation does not in any way deny or limit carrier access. Exclusive use charges do not apply to shipments in the *Whitten* and *Tri–State* cases where the GBLs bear this annotation.

#### b. Locks

■ The plaintiffs in the *Baggett, Whitten,* and *Tri-State* cases argue that the application of locks to seal shipments constituted a constructive request for exclusive use. The defendant argues that a cable seal lock and a wire twist seal are used as seals and both can be removed by the carrier, and that the application of locks was not a request for exclusive use.

The *Campbell* and *American Farm Lines* cases indicate that the substantial compliance test requires a written notation on the GBL. The Court of Claims held in *Campbell* that "[i]f there appears on the bill of lading some *written* notation, which reasonably apprises the carrier that the shipper is requesting the exclusive use of its vehicle, we think this is sufficient compliance with the requirement for making the exclusive use rates applicable." 157 Ct.Cl. at 371, 302 F.2d at 272 (emphasis added). In *American Farm Lines,* the carrier argued that it was entitled to exclusive use charges when a set of shipments, bearing no annotation concerning seals, was sealed with cable seal locks that could not be removed by ordinary means. *American Farm Lines, Inc.,* B–203805, B–204113, Dec. 24, 1981, slip op. at 3. Relying on *Campbell,* the Comptroller General held that "there [was] no substantial compliance with the tender requirement for a *written* annotation requesting exclusive use service." *Id.* at 3–4 (emphasis added). The Comptroller General found that "[t]he *Campbell* substantial compliance test does not eliminate the need for a notation which is indicative of a request for exclusive use of vehicle." [7] *Id.* at 6. In the *Baggett* and *Tri-State* cases, the application of seals, cable lock seals, or other locks, unaccompanied by a *written* notation which reasonably apprises the carrier that the shipper is requesting exclusive use, does not constitute a request for exclusive use. The carri-

ers in *Baggett* and *Tri-State* are not entitled to exclusive use charges on the theory that the application of locks is a request for exclusive use.

■ The *Whitten* cases present a different set of issues, but the results are the same. The tariff in the *Whitten* cases states that exclusive use is requested "[w]hen shipper applies a lock or other security device (other than an ordinary seal) to prevent easy access to Dromedary." The Comptroller General in *American Farm Lines* based its holding that substantial compliance required a written annotation on the ground that "there [was] no substantial compliance with the tender requirement for a *written* annotation requesting exclusive use service." *Id.* at 3–4 (emphasis added). This court interprets the *Campbell* and *American Farm Lines* cases as holding that when the contract between the parties requires a written annotation requesting exclusive use, the substantial compliance test requires the same. The cited tariff language from the *Whitten* cases, however, does not require a written annotation on the GBL. Rather, the plain language reveals that exclusive use is requested for all shipments where a lock, other than an ordinary seal, was applied. *See Fort Vancouver Plywood Co.,* 860 F.2d at 413 (applying the plain language analysis of contract interpretation); *George Hyman Construction Co.,* 832 F.2d at 579 (stating that the words of an unambiguous contract should be "given their plain and ordinary meaning"). Nonetheless, other portions of the contractual agreement between the parties require a written annotation on the GBL requesting exclusive use, and hence the application of locks to shipments alone in the *Whitten* cases does not constitute a request for exclusive use.

■ Dual Driver Protection Service (DDPS) was requested by the shipper and provided by the carrier for almost all of the

---

7. The Comptroller General also held that exclusive use was not requested in this situation where a shipment was sealed with a cable lock seal, and the GBL was annotated "CABLE LOC[K] SEAL APPLIED TO DOORS. DO NOT USE FLAME PRODUCING DEVICE TO REMOVE." *Id.* at 3–4. A request for exclusive use

was found only in the circumstance that ordinary seals were applied and the GBLs contained the annotation "DO NOT BREAK SEALS EXCEPT IN CASE OF AN EMERGENCY OR UPON PRIOR AUTHORITY OF THE CONSIGNOR OR CONSIGNEE."

shipments in the *Whitten* cases. For these shipments, the DDPS provisions of the respective tariffs provide that the "[c]arrier cannot apply exclusive use charges unless exclusive use is requested on the bill of lading by the shipper." For all of the shipments, 41 C.F.R. § 101–41.302–6(a) requires that GBLs be annotated to reflect the provision of special services. The application of locks, absent a request for exclusive use on the GBL, is not a request for exclusive use in the *Whitten* cases for two different reasons. First, the contractual agreements require a *written* annotation on the bill of lading requesting exclusive use, and therefore in accord with the *Campbell* and *American Farm Lines* cases, the substantial compliance test requires a written notation on the GBL. Absent a written annotation, the application of locks alone is not a request for exclusive use in the *Whitten* cases. Second, for all of the shipments in the *Whitten* cases there is a conflict between the terms of the contracts between the parties. One term states that the application of locks is a request for exclusive use. Other terms state that a request for exclusive use must be requested on the bill of lading. Established case law holds that if the carrier is uncertain about the type of service to be performed, then the carrier is obligated to seek clarification and correction of the documents before the shipments are accepted for transportation, or else run the risk of resulting damages. *Riss International,* B–226006, Feb. 19, 1988, *aff'd on reconsideration,* B–226006.2, April 27, 1990; *Starflight, Inc.,* B–218844, 65 Comp.Gen. 84 (1985); *Continental Van Lines, Inc.,* B–206558, Nov. 29, 1983. Therefore, the application of locks alone in the *Whitten* cases does not constitute a request for exclusive use.

## CONCLUSION

For the reasons stated above, the court holds that the prior consent statement standing alone and the application of locks standing alone do not constitute requests for exclusive use. However, this court holds that in the *Whitten* and *Tri–State* cases the prior consent statement, read in

conjunction with the tariffs in those cases, constitutes a request for exclusive use, but that the annotation which differs from the prior consent statement is not a request for exclusive use. Exclusive use charges apply only to those shipments where exclusive use was requested *and* there is some evidence that exclusive use was provided.

Based upon the foregoing, the following is a summary of this court's ruling in each case:

1. *Baggett Transportation Co. v. United States* (No. 467–89C). Neither the prior consent statement on the GBL, read in conjunction with the applicable tariffs, nor the application of locks constitute a request for exclusive use. Exclusive use charges do not apply to any of the shipments in this case. The plaintiff's motion for partial summary judgment is denied, and the defendant's motion for summary judgment is granted. The Clerk of the Court shall dismiss the complaint. Each party will bear its own costs.

2. *C.I. Whitten Transfer Co. v. United States* (Nos. 468–89C and 575–89C) and *Tri–State Motor Transit Co. v. United States* (No. 471–89C). The prior consent statement on the GBL, read in conjunction with the tariff, constitutes a request for exclusive use in these cases. Exclusive use was not requested for shipments with GBLs bearing annotations differing from the prior consent statement or for shipments with GBLs bearing no annotation at all. The application of locks alone does not constitute a request for exclusive use in these cases. For shipments where exclusive use was requested, exclusive use charges apply only if there is some evidence that exclusive use was provided. The parties are directed to submit a stipulation to the court within 45 days of the issuance of this opinion listing those shipments to which exclusive use charges apply and the amount of those charges. The court will then enter judgment accordingly.

3. *Coast Counties Express, Inc. v. United States* (No. 469–89C). The prior consent statement on the GBL, read in conjunction with the applicable tariff, does

not constitute a request for exclusive use in this case. The plaintiff here does not argue that the application of locks constituted a request for exclusive use. Exclusive use charges do not apply to any of the shipments in this case. The plaintiff's motion for partial summary judgment is denied, and the defendant's motion for summary judgment is granted. The Clerk of the Court shall dismiss the complaint. Each party will bear its own costs.