**BAGGETT TRANSPORTATION CO., and Coast Counties Express, Inc., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 91–5127.**

United States Court of Appeals, Federal Circuit.

July 7, 1992.

Richard O. Burst, Sr., Port Isabel, Tex., argued, for plaintiffs-appellants.

Odessa P. Jackson, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

DANIEL M. FRIEDMAN, Senior Circuit Judge.

The sole question in this appeal is whether the United States requested two motor carriers to provide exclusive use of the containers used to transport government property, the effect of such request being that the carriers would be entitled to increased shipping charges. The United States Claims Court held that the United States had not requested exclusive use, and dismissed the carriers' suit for the additional charges. We affirm.

I

A. During the latter half of 1986, Baggett Transportation Co. (Baggett) and Coast Counties Express, Inc. (Coast) transported goods for the Department of the Army under contracts with the Military Traffic Management Command (MTMC). The contracts between the government and the carriers consisted of three documents: the "tender" is the carrier's continuing offer to perform transportation services for stated prices; the carrier's "tariff" is a document on file with the Interstate Commerce Commission, incorporated by reference into the carrier's tender, which sets forth applicable rates, charges, and services; the government bill of lading is the document by which the government accepts the carrier's services, and the government often annotates it with various directions to the carrier. The shipments consisted primarily of hazardous materials such as explosives, weapons, and ammunition.

The carriers' tariffs provided a higher rate for "exclusive use" requested by the shipper. "Exclusive use" means that the carrier will not combine a shipment with any other on the same vehicle or in the same container; a carrier providing this service thus might transport a shipment on partially filled trucks or with partially filled containers.

The carriers billed and received payment from the Department of Defense for these

services at the regular non-"exclusive use" rate. More than a year later, Baggett and Coast submitted supplemental bills to the Defense Department, claiming that they provided exclusive use of shipping containers, known as dromedaries, at the government's request. The government refused to pay the supplemental charges, and Baggett and Coast filed suit in the Claims Court for those charges.

B. In their complaints, Baggett and Coast alleged that the government requested exclusive use of containers through a notation on its bills of lading referred to as the "prior consent statement," and Baggett further alleged that for some of its shipments, the government requested exclusive use through its application of locks to shipping containers.

The Claims Court granted summary judgment for the government and dismissed the complaints. The court held that neither the notation nor the application of locks constituted a request for exclusive use. *Baggett Transp. Co. v. United States*, 23 Cl.Ct. 263, 272, 274 (1991). In so holding, the court examined the contracts between the government and the carriers, the regulations governing requests for exclusive use, and, in Coast's case, a tariff bureau quotation addressing requests for exclusive use.

The court concluded that for exclusive use charges to apply, "(1) [t]here must be some evidence that exclusive use of vehicle services was, in fact, performed ... [and] (2) [t]here must be substantial compliance with requirements of the tender or tariff concerning an annotation on the [bill of lading] requesting exclusive use." *Id.* at 270. The court held that there was some evidence that the carriers provided exclusive use, but that there was no "substantial compliance" with the tender or tariff rules concerning requests for exclusive use. The court further concluded that the governing regulations and tariff bureau quotation supported the government's position that it did not request exclusive use. *Id.* at 270–72.

## II

■ A. 1. Baggett and Coast first contend that the following "prior consent statement," a notation which appeared on the government's bills of lading in most of the shipments, constituted a request for exclusive use:

SHIPPER SEAL(S) APPLIED. CARRIER MAY REMOVE SEAL(S) AND REPLACE WITH EQUIVALENT SEAL(S) ON PRIOR CONSENT OF CONSIGNOR. IF SEALS ARE BROKEN IN EMERGENCIES, NOTIFY CONSIGNOR AS SOON AS POSSIBLE. CARRIER MUST ANNOTATE SEAL CHANGES ON [BILL OF LADING]. APPLICATION OF SHIPPER SEALS DOES NOT CONSTITUTE A REQUEST FOR EXCLUSIVE USE OF VEHICLE/CONTAINER.

The carriers rely on a decision of our predecessor court, *Campbell "66" Express, Inc. v. United States*, 302 F.2d 270, 157 Ct.Cl. 365 (1962), and a decision of the Comptroller General, *American Farm Lines, Inc.*, Nos. B–203805, B–204113 (Comptroller General, December 24, 1981), to support their contention that the prior consent statement was a request for exclusive use.

In *Campbell*, the government bill of lading contained the following language:

Do not break seal except in case of emergency.

Notify Consignee Of Circumstances When Seal Is Broken, With Advice Of New Seal Number Applied, By Showing Such Information On Waybill Or Other Form Or Memorandum Accompanying Vehicle To Destination.

302 F.2d at 270.

The bills of lading in three out of four shipments in that case stated "Exclusive Use of Vehicle Requested By The Government"; the bill of lading in the fourth shipment omitted that notation, but contained the "do not break seal" notation. The fourth bill also contained a certificate to be signed by the carrier certifying that "Exclusive Vehicle Service" was furnished. The Court of Claims stated that when the carrier

received the bill of lading stamped with the above certificate, it could not have construed it otherwise than as a request by the Government for the exclusive use of its vehicle. How could plaintiff have believed otherwise? Defendant requested plaintiff's agent to certify that such service had been performed. This was tantamount to a request that it be furnished.

*Id.* 302 F.2d at 272.

The government admitted that it had exclusive use of the vehicle used in the fourth shipment, but contended that "since the bill of lading did not contain the notation, 'Exclusive Use of Vehicle Requested,' as required by the applicable tariff rule, the exclusive use rates did not apply." *Id.* In rejecting this contention, the Court of Claims stated:

It is true that the tariff rule expressly provides what language is to be endorsed on the bill of lading in order to request the exclusive use of a carrier's vehicle, but we do not think it was intended thereby that all other language adequate to make the same request was to be excluded. It was not intended that form rather than substance would govern the transaction. If there appears on the bill of lading some written notation, which reasonably apprises the carrier that the shipper is requesting the exclusive use of its vehicle, we think this is sufficient compliance with the requirement for making exclusive use rates applicable.

*Id.*

In *American Farm Lines,* the Comptroller General, applying his interpretation of *Campbell,* held that, in light of governing regulations, the annotation "DO NOT BREAK SEALS" was a request for exclusive use because it "reasonably apprises the carrier that the shipper is requesting the exclusive use of vehicle service." The controlling regulations there stated that the "DO NOT BREAK SEALS" language was to be accompanied by a request for exclusive use. Even though the words "Exclusive Use Requested" did not appear on the bill of lading, the Comptroller General determined that, in view of the regula-

tion, the carrier was justified in inferring a request for exclusive use. The Comptroller General stated that "the tender language, requiring a notation indicating that exclusive use is requested does not necessarily restrict the required notation to the precise words, 'exclusive use.' A notation which states in substance a request for exclusive use would appear acceptable."

2. In 1985, after the *American Farm Lines* decision, the government amended its Routing Instruction Notes, which it uses to make notations on bills of lading. It eliminated the "DO NOT BREAK SEALS" language and replaced it with the "prior consent" statement, which it stated was to be used whenever the government applied seals, but did not request exclusive use.

B. Baggett and Coast contend that the prior consent statement, like the language at issue in *Campbell* and *American Farm Lines,* should be construed as an "in substance" request for exclusive use. They argue that the "prior consent" language is in effect no different from the "DO NOT BREAK SEALS" language, which they assert those cases held to be requests for exclusive use, and that the 1985 language change was merely semantic.

1. The foundation of the argument is the assumption that *Campbell* held that the "DO NOT BREAK SEALS" language was a request for exclusive use. *Campbell* did not so hold.

The actual holding in *Campbell* was narrow: that even though a tariff provision requires the statement on the bill of lading "exclusive use of vehicle requested," exclusive use nevertheless could be requested without that statement, as long as "there appears on the bill of lading some written notation, which reasonably apprises the carrier that the shipper is requesting the exclusive use of its vehicle." 302 F.2d at 272.

The statement that the court in *Campbell* found to have reasonably apprised the carrier that the government requested exclusive use was the certificate on the bill of lading. Although the court noted the "DO NOT BREAK SEALS" language on the bill, nothing in the opinion even suggests

that that language was the basis for the court's holding that the government requested exclusive use on the fourth bill of lading. To the contrary, the opinion leaves no doubt that the language that the court interpreted as the request for exclusive use was the certificate. To the extent that the Comptroller General's decision in *American Farm Lines* interpreted *Campbell* as resting on the "DO NOT BREAK SEALS" language—a decision that does not bind us—it was erroneous.

In the present case, the government bills of lading in the record do not contain such a certificate. *Campbell*, therefore, does not support the carriers' contention that the government requested exclusive use.

2. The language in the present bills of lading does not establish a government request for exclusive use. In view of the explicit statement, "application of shipper seals does not constitute a request for exclusive use of vehicle/container," it is difficult to comprehend how the carriers could have believed that they were asked to provide exclusive service when the bills of lading explicitly told them that the application of shipper seals was not a request for exclusive use.

The direction in the bills in the prior cases that the carrier should not break the seals meant that they could not use the sealed vehicles also to carry other goods, and that requirement could be viewed as in effect a government request for exclusive use of the vehicles. The limitation in the present case that the carrier may break the seals only with the government's prior consent merely specified the procedure the carrier must follow to open the containers. It did not, however, absolutely preclude the carrier from using the containers to carry other goods. Fairly read, the prior consent statement as a whole informs the carrier that the applied seals may be removed with consent of the shipper, but that the application of those seals and the prior consent requirement is not a request for exclusive use.

The carriers' tariffs do not support the carriers' position. Baggett's tariff simply defines exclusive use ("the Carrier will transport the shipment from origin to destination without combining said shipment with any other shipment in the same vehicle"), and sets forth the charges for such service.

Coast's tariff states, in relevant part:

When a shipper inserts the following notation on the bill-of-lading:

"DO NOT BREAK SEALS EXCEPT IN CASE OF EMERGENCY OR UPON PRIOR AUTHORITY OF THE CONSIGNOR OR CONSIGNEE. IF FOUND BROKEN OR IF BROKEN FOR EMERGENCY REASONS, APPLY CARRIER'S SEAL AS SOON AS POSSIBLE AND IMMEDIATELY NOTIFY BOTH THE CONSIGNOR AND THE CONSIGNEE."

Carrier will consider this as requiring exclusive use and charges named in Paragraph 1 of this item will apply.

This tariff does not address the effect of the statement in the bills of lading in the present case that the mere application of seals does not constitute a requirement for exclusive use.

Rocky Mountain Tariff Bureau Quotation 16 applied to Coast's shipments. This Quotation provides that unless the bill of lading contains the annotation "Exclusive Use Of Vehicle Requested By The Government," or the "DO NOT BREAK SEALS" language, "the application of seal/locks ... will not, in itself, require exclusive use of the vehicle."

Governing agency regulations in this case provide that the "DO NOT BREAK SEALS" language constitutes a request for exclusive use, but that the prior consent statement does not. The Military Traffic Management Regulations (MTMR), which govern transportation of hazardous defense materials, require that a notation requesting exclusive use be placed on the bill of lading when that service is sought. The regulations require that when exclusive use is desired, both "Exclusive use of vehicle requested by the Government" or a similar notation, and the "DO NOT BREAK SEALS" language, be placed on the bill. MTMR, AR 55–355/NAVSUPINST 4600.70/AFR 75–2/MCO P4600.

14B/DLAR 4500.3 (July 31, 1986 UPDATE) at pp. 173, 64. The regulations further provide that when exclusive use is not requested, the prior consent statement should be placed on the bill of lading. *Id.* at 171. Far from indicating that the prior consent statement is a request for exclusive use, these regulations indicate the opposite.

Baggett and Coast argue that these regulations do not bind them. They claim that these are internal regulations of the MTMC, and that the government changed them unilaterally without notice.

In February 1986, the government published notice in the Federal Register that the MTMC was revising "Minimum Levels of Security for DOD Shipments of Arms, Ammunition and Explosives within the Continental United States." These changes were later published in the MTMR, cited above.

■ As the Claims Court stated, "[w]hile these regulations are directed at shipping officers, not to carriers," the regulations do "provide guidance in interpreting the language of the annotations on the [bills of lading] based upon established case law that carriers are expected to be aware of the shipping practices of the government, a major user of transportation services." 23 Cl.Ct. at 272 n. 5.

C. Further support for our conclusion that the government did not request exclusive use is the fact that the carriers initially and regularly billed the government at the regular rates. The carriers did not seek the additional higher exclusive use rates until more than a year after they submitted the initial bills. It is difficult to believe that, if the carriers had viewed the "prior consent" language on the present bills as requests for exclusive use, they would not initially have billed the government on that basis. *Cf. Coast Counties Express,* No. B–227179 (Comptroller General, March 23, 1988) ("[T]he fact that Coast billed and collected the lower dromedary tender charges on at least 337 shipments," rather than the higher charges for closed van service, and that "[i]t was not until later that Coast presented supplemental bills for the higher non-dromedary charges," "supported" the "view" that "the government shipping officers requested dromedary equipment or service when they called Coast, and Coast furnished closed vans solely as an operating convenience because no dromedary equipment was available.")

### III

■ Baggett (but not Coast) contends that the government's application of cable seal locks and wire twist seals to its shipments was a constructive request for exclusive use. The Claims Court correctly rejected this argument.

Since the relationship between the government and Baggett was wholly contractual, any government request for exclusive use had to be made in accordance with the contract. The procedure the contract specified for requesting exclusive use was for the government so to indicate on the bill of lading. As the Claims Court correctly held:

> The *Campbell* and *American Farm Lines* cases indicate that the substantial compliance test requires a written notation on the [bill of lading]. The Court of Claims held in *Campbell* that '[i]f there appears on the bill of lading some written notation, which reasonably apprises the carrier that the shipper is requesting the exclusive use of its vehicle, we think this is sufficient compliance with the requirement for making the exclusive use rates applicable.' 157 Ct.Cl. at 371, 302 F.2d at 272 (emphasis added).... The Comptroller General [in *American Farm Lines*] found that '[t]he *Campbell* substantial compliance test does not eliminate the need for a notation which is indicative of a request for exclusive use of the vehicle.' In the Baggett ... case[ ], the application of seals, cable lock seals, or other locks, unaccompanied by a *written* notation which reasonably apprises the carrier that the shipper is requesting exclusive use, does not constitute a request for exclusive use.

23 Cl.Ct. at 274.

### IV

Finally, Baggett and Coast contend that the government's 1985 change from the

"DO NOT BREAK SEALS" language to the "prior consent" statement and the government's refusal to pay increased charges, effected a taking of the carriers' container space without just compensation. The carriers argue that this was a unilateral change in internal regulations which permitted the government to obtain exclusive use without paying for it.

This contention is merely a reformulation of the carriers' argument, which we rejected in Part II, that the prior consent statement is a request for exclusive use. Our rejection of that argument undermines the carriers' taking claim. Moreover, as the Court of Claims stated in *Sun Oil Co. v. United States*, 572 F.2d 786, 818, 215 Ct.Cl. 716 (1978), "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." (Citation omitted).

## V

It is unfortunate that there has been the need for the substantial expenditure of judicial, legal and other resources in this case, since the issues we have addressed in this opinion could have been avoided had the government and the carriers been more precise and clearer in their bills of lading and tariff statements.

The government, for example, could have unequivocally stated on its bills of lading that, unless the bill explicitly states "exclusive use requested," no other language on the bill would constitute a request for such service. Similarly, the bills could have stated that no seals or directions regarding seals would constitute a request for exclusive use. The carriers, perhaps after discussion with the government, could have similarly amended their tariffs to avoid ambiguity. We assume that both the government and the carriers wish to make the procedures and requirements governing exclusive use as clear as possible.

Perhaps, as a result of this opinion, the government and the carriers will take appropriate action to clarify the standards on the bills of lading and in the tariffs governing requests for exclusive use, to avoid the ambiguities and misunderstandings that gave rise to this litigation.

## CONCLUSION

The judgment of the Claims Court is AFFIRMED.