**FIFTH THIRD BANK OF WESTERN OHIO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–503C.

United States Court of Federal Claims.

Aug. 6, 2003.

Alan M. Grimaldi, Washington, DC, for plaintiff. Robert M. Bruskin, Robert H. Cox, Timothy K. Armstrong, Alexander B. Berger, and Jennifer R. Bagosy, Howrey, Simon, Arnold & White, LLP, of counsel. Tina Woods, Fifth Third Bank of Western Ohio, Dayton, OH, of counsel.

David A. Levitt, Washington, DC, with whom was Deputy Assistant Attorney General Stuart E. Schiffer, for defendant. Brian

A. Mizoguchi, Jr., Jonathan S. Lawlor, John H. Roberson, and Gregory R. Firehock, U.S. Department of Justice, of counsel.

### ORDER

MILLER, Judge.

This order addresses the remaining claims in this *Winstar* case brought by Fifth Third Bank of Western Ohio ("plaintiff"), successor to Citizens Federal Bank, FSB.[1] *See United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). On June 12, 2003, this court issued an opinion granting defendant's motion, pursuant to RCFC 52(c), for judgment on partial findings as to liability. *See Fifth Third Bank of Western Ohio v. United States*, 56 Fed.Cl. 668 (2003). The opinion addressed only plaintiff's theories based on breach of contract and breach of implied contract, as reflected in Counts I and II of plaintiff's first amended complaint filed on October 23, 1996. The remaining causes of action—Counts III, IV, and V— plead various iterations of a violation of Citizens' Fifth Amendment rights.

Subsequent to the court's liability decision, defendant filed a motion arguing that Counts III, IV, and V of the complaint should be dismissed in light of the Federal Circuit's decision in *Castle v. United States*, 301 F.3d 1328 (Fed.Cir.2002). The court treated this motion as a supplemental brief to defendant's October 10, 2000 dispositive motion, in which defendant had moved for summary judgment as to Counts III and IV and sought dismissal for lack of subject matter jurisdiction with respect to Count V. The court ordered additional briefing from plaintiff and withheld entry of judgment pending disposition of these remaining claims. *See* Order entered June 24, 2003, ¶ 1. The legal viability of Counts III, IV, and V of plaintiff's first amended complaint is now before the court.

Count III of plaintiff's first amended complaint pleads a taking of Citizens' contract rights.[2] Plaintiff argues that the Government, through the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"), and its implementing regulations, took Citizens' contract rights "arising from the government's promises regarding the use of the purchase method of accounting and the regulatory capital treatment of goodwill . . . ." First Am. Compl. filed Oct. 23, 1996, ¶ 84. Plaintiff concedes that the Federal Circuit's reasoning in *Castle* supports the dismissal of this cause of action. *See* Pl.'s Br. filed July 8, 2003, at 4. In *Castle* the court of appeals concluded that the enactment of FIRREA did not take plaintiffs' contract rights because plaintiffs retained the full range of remedies available to them under the contract after FIRREA's passage. 301 F.3d at 1341–42. Count III in the case at bar presents a claim almost identical to that rejected in *Castle*, as plaintiff has conceded.[3] Thus, the court grants defendant's motion for summary judgment as to Count III.

Count V of the first amended complaint alleges a violation of Citizens' due process rights, based on the theory that FIRREA and its implementing regulations precluded Citizens from counting goodwill toward its regulatory capital and from amortizing the goodwill. First Am. Compl. ¶¶ 92–93. Defendant contends that this claim is outside the subject matter jurisdiction of the Court of Federal Claims, and

---

1. Citizens Federal Bank, FSB, merged into plaintiff on August 14, 1998. This opinion refers to "Citizens" and "plaintiff" interchangeably.

2. Plaintiff's takings theories presuppose the existence of enforceable contracts between Citizens and the Government. After plaintiff rested its case, the court found that no such contracts existed. *See Fifth Third*, 56 Fed.Cl. at 696. In ruling on the remaining three counts of the first amended complaint, the court employs terms that may suggest the existence of a contractual relationship between the parties only for the purpose of explicating plaintiff's takings theories.

Nothing in this order affects the findings in the court's June 12, 2003 opinion regarding the parties' lack of contractual intent.

3. Plaintiff also acknowledges that the "asserted mechanism of the taking" in Count III—which encompasses not only FIRREA, but various regulations of and actions taken by the Office of Thrift Supervision—"is broader than the Court of Appeals addressed in *Castle*, [but that] the fair implications of the Court's reasoning are inconsistent with Count III . . . ." Pl.'s Br. filed July 8, 2003, at 4.

plaintiff agrees. *See* Pl.'s Br. filed July 8, 2003, at 6. In *Crocker v. United States*, 125 F.3d 1475 (Fed.Cir.1997) (per curiam), the Federal Circuit affirmed the Court of Federal Claims's dismissal of plaintiff's due process claim for lack of jurisdiction. The appeals court reiterated the well established principle that the Tucker Act, 28 U.S.C. § 1491 (2002), waives the Government's sovereign immunity only when a statute, regulation, or constitutional provision confers a substantive right to money damages. *Crocker*, 125 F.3d at 1476 (citing *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). Because the due process clause of the Fifth Amendment does not establish such a right, the Court of Federal Claims lacks jurisdiction over due process causes of action. *Id.* Accordingly, the court grants defendant's motion with respect to Count V of plaintiff's first amended complaint.

Plaintiff's remaining cause of action, as reflected in Count IV of the first amended complaint, alleges a taking of Citizens' property rights. This is the claim that plaintiff views as distinguishable from that addressed in *Castle*. Plaintiff maintains that Citizens' ability to count the goodwill generated from the supervisory transactions toward its regulatory capital and "to amortize such goodwill over extended periods of up to 40 years constitutes valuable property based upon, among other things, [Citizens'] reasonable, investment-based expectations." First Am. Compl. ¶ 88. The Government, plaintiff charges, took this property without providing just compensation as required by the Constitution. *Id.* ¶ 89.

Defendant argues that this claim, too, is foreclosed by *Castle*. Plaintiff insists that *Castle* is inapposite because Count IV pleads a taking of the goodwill generated by the transactions, not a taking of contract rights. Plaintiff argues that *Castle* precludes only a claim for the taking of contract rights and that the Federal Circuit's recent decision in *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed.Cir.2003), militates against dismissing Count IV. Presenting Count IV as a viable alternative to its breach of contract claim, plaintiff requests that the court stay

adjudication of Count IV until the Federal Circuit addresses the court's entry of judgment for defendant regarding all the contract claims.

■ Both Count III—which plaintiff concedes is foreclosed by *Castle*—and Count IV involve the regulatory treatment accorded the supervisory transactions. Regardless of how plaintiff frames its causes of action, this treatment was the result of negotiations (which the court has found did not result in enforceable contracts) between Citizens and the Government. It is well settled that when the allegedly taken property was created by agreement, interference with it " 'generally gives rise to a breach claim[,] not a taking[s] claim.' " *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001) (quoting *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978)); *see also Baggett Transp. Co. v. United States*, 969 F.2d 1028, 1034 (Fed.Cir.1992). Conversely, if the property at issue is not the product of the relevant agreement, then a takings cause of action may co-exist with a breach claim. *Compare J.J. Henry Co. v. United States*, 188 Ct.Cl. 39, 411 F.2d 1246, 1249 (1969) (takings remedy unavailable when parties' rights created voluntarily by contract), *with Pi Elecs., Corp. v. United States*, 55 Fed.Cl. 279, 286 (2003) (refusing to dismiss takings cause of action when property at issue arguably preexisted contract).

■ Plaintiff has failed to show that Citizens' "property"—the ability to use goodwill to its regulatory advantage—had any source other than the negotiations surrounding the supervisory transactions. Whether called a "contract right" or "property," the accounting treatment accorded goodwill exists only because of the agreements between Citizens and the Government. Thus, *Castle* forecloses plaintiff's takings claim based on the impact of FIRREA. *See* 301 F.3d at 1341–42. Plaintiff attempted to vindicate this right through the breach of contract suit that it pursued. The Federal Circuit is unequivocal that, when a breach of contract remedy is available in a *Winstar* setting, a takings remedy is not. *See id.* at 1341–42.

Even if the court were to entertain plaintiff's contention that Count IV survives the

import of *Castle*, Citizens did not possess a reasonable expectation that the treatment of goodwill would be immune from future legislation.[4] Plaintiff advises that *Cienega Gardens* cautions against dismissing Count IV of the complaint. The Federal Circuit in *Cienega Gardens* addressed whether two congressional acts abolished, in violation of the takings clause, plaintiffs' contractual right to pre-pay mortgage loans insured by the Department of Housing and Urban Development. In ruling that plaintiffs presented a cognizable regulatory takings claim, the panel stated that, in determining the reasonableness of a claimant's investment-backed expectations, a court should not find a claimant's expectations foreclosed based only on the fact that the industry at issue is highly regulated. 331 F.3d at 1350.

This language, however, does not immunize Count IV from dismissal. The Federal Circuit in *Cienega Gardens* recognized that a reviewing court must engage in a fact-intensive inquiry that takes into account the field in which the regulation occurred. The court singled out banking as having a "history [of] consistent, intrusive, and changing government regulation of all facets of all transactions" and stated that the "effect of being in so highly a regulated field is clear." 331 F.3d at 1350 (discussing *Branch v. United States*, 69 F.3d 1571, 1575 (Fed.Cir.1995)).

A review of *Branch* amplifies the Federal Circuit's statement. The appeals court in *Branch* rejected the argument that the cross-guarantee provision of FIRREA effected either a *per se* or a regulatory taking of plaintiff's property. 69 F.3d at 1577–82. The trial court, finding that the provision resulted in a regulatory taking, treated the abrogation of limited corporate liability "as a remarkable departure from historical practice." *Id.* at 1582. The Federal Circuit disagreed, explaining that banking has a long history of government regulation and that this history prevented plaintiff from possessing a reasonable expectation that its limited liability would remain inviolate: "In light of the historical practices in the bank regulatory field

... it would have been unreasonable for the owners of [plaintiff] to expect that the bank's assets would never be subject to liability based on losses suffered by other members of the [banking] system." *Id.; see also Castle v. United States*, 48 Fed.Cl. 187, 220 (2000), *aff'd in part, rev'd in part, and vacated and remanded in part*, 301 F.3d at 1341 (citing *Branch* for proposition that "seizure of a bank for failure to comply with regulatory capital requirements does not constitute a taking"). Consequently, the cross-guarantee provision did not give rise to a compensable taking.

As declared by the Federal Circuit in *Cienega Gardens*, it is "clear" that actors in the banking arena have no reasonable expectation that they can operate free from future government regulation. 331 F.3d at 1350; *see also California Hous. Sec., Inc. v. United States*, 959 F.2d 955, 958–59 (Fed.Cir.1992); *Sinclair v. United States*, 56 Fed.Cl. 270, 282–83 (2003). The *Cienega Gardens* court, in fact, supported its decision by pointing out that "the field of private mortgage lending is one which cannot be considered highly regulated." *Id.* at 1351 n. 45. The recognition of the Government's pervasive regulation of the banking industry would be fatal to Count IV of plaintiff's complaint were plaintiff able to pursue a takings remedy.

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion for summary judgment is granted with respect to Counts III and IV of the first amended complaint, and the Clerk of the Court shall enter judgment on all counts of the first amended complaint, other than Count V, for defendant.

2. Count V of the first amended complaint is dismissed for lack of subject matter jurisdiction, and the Clerk of the Court shall dismiss the first amended complaint as to this count without prejudice.

3. Paragraph 1 of the court's June 24, 2003 order is vacated. The Clerk of the

---

4. A court must consider the claimant's investment-backed expectations when engaging in a regulatory takings analysis. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 633, 121 S.Ct. 2448,

150 L.Ed.2d 592 (2001) (O'Connor, J., concurring); *Penn Cent. Transp., Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

Court is directed to enter judgment consistent with ¶¶ 1 and 2 hereof.

No costs.